THE CITY OF BURLINGAME V. OSCAR THOMPSON.

No. 14,848.   (86 Pac. 449.)

°SYLLABUS BY THE COURT.

1. MUNICIPAL CORPORATIONS—*Prohibition of Operation of Pool-tables.* The legislature may authorize cities of the third class to prohibit the maintenance and operation of pool-tables for hire within the city limits.

2. ———— *Police Power—Valid Ordinance.* A prohibitive ordinance enacted pursuant to legislative authority is not invalid because it suppresses pool-tables lawfully maintained at the time the ordinance goes into effect or because it suppresses pool-tables theretofore conducted in a quiet and orderly manner.

3. ———— *Motive in Enacting an Ordinance—Review.* The motives of city officials in enacting such an ordinance and in prosecuting an offender against it cannot be investigated by this court in an appeal from a conviction under it.

Appeal from Osage district court; ROBERT C. HEIZER, judge. Opinion filed July 6, 1906. Affirmed.

*J. H. Stavely,* for appellee.

*J. T. Pringle,* for appellant.

The opinion of the court was delivered by

BURCH, J.: Appellant was convicted of maintaining and operating pool-tables in the city of Burlingame contrary to an ordinance enacted August 21, 1905, which reads as follows:

"SECTION 1. It shall be unlawful for any person or persons to operate or maintain any billiard-table, pool-table, pool-room, pool-hall or bowling-alley for pay within the city limits of the city of Burlingame.

"SEC. 2. Any person who shall violate any of the provisions of this ordinance shall be deemed guilty of a misdemeanor, and shall upon conviction thereof be fined not less than five nor more than fifty dollars for each and every offense."

The statutory authority for this ordinance is found

in chapter 125 of the Laws of 1905, section 1 of which reads as follows:

"That the city council of cities of the third class within the state of Kansas shall have the power to enact an ordinance restraining, prohibiting and suppressing pool-tables, pool-rooms and pool-halls within the city limits."

Appellant had been having trouble with the city before he was arrested in the proceeding from which this appeal is taken. He now asks this court to take into consideration "friendly assurances" of the city officials under which in 1902 he started his establishment at an outlay of some $600, the payment of $410 license fees from 1902 to 1905, the enactment in July, 1905, of an ordinance increasing his license, the fact that he secured a permanent injunction against the enforcement of that ordinance as unreasonable; and some other claimed facts not in the record but asserted in his brief, and from the whole story to conclude that the August ordinance was passed from bad motives and that he is prosecuted through malice and vindictiveness. It requires no argument and no reference to precedent to show that this court cannot sit in judgment upon the motives actuating the municipal authorities in pursuing a course which the legislature expressly authorized them to take.

Appellant argues that the ordinance in question strikes down a business of profit, renders his property of little value and of no use, and hence that his rights under the federal constitution have been infringed." If the statute under which the ordinance was enacted falls within the police power of the state appellant must submit, whatever the effect upon his property and business. All rights exist subject to that power. By allowing pool-halls once to run the state gave no assurance that they might continue, and did not estop itself from subsequently prohibiting them. This subject was fully considered in the case of *Mugler v. Kansas,* 123 U. S.

623, 8 Sup. Ct. 273, 31 L. Ed. 205. The doctrine there announced was followed in the case of *Powell v. Pennsylvania,* 127 U. S. 678, 8 Sup. Ct. 992, 1257, 32 L. Ed. 253, and no departure from it has since been made.

On the trial the city admitted that appellant always conducted his place in a quiet and orderly manner. He argues that at common law the operation of billiard-tables (pool-tables being like them) was not a nuisance and that the legislature cannot make his pool-hall a nuisance unless it becomes disorderly. The legislature was not concerned with conditions of society in England when the common law was in process of making, but it had to deal with the morals of small cities in Kansas; and tumult and uproar are not indispensable to legislative interference for the public good. Many games and practices may be detrimental to the welfare of a community which are unaccompanied by boisterousness and cannot be classed with nuisances of the disturbing kind. Some of the most enticing are reported as "gentlemen's games," in playing which the nicest decorum is observed. So the constant tendency to become disorderly may be but one of the faults of the small-town pool-room. It may be vicious and not be loud.

The supreme court of Nebraska has said that a pool-hall in a village is apt to degenerate into a trysting place for idlers and a nidus for vice. (*Morgan v. State* 64 Neb. 369, 90 N. W. 108.) The supreme court of Missouri has expressed itself thus:

"It is very clear that those exercising useful trades and occupations do not occupy the same relation to society as those engaged solely in giving amusement to the public, and a much larger discretion should be given in regulating the latter than the former.

"Keepers of billiard-tables are not recognized by the state as exercising a useful occupation. They are subjected to police regulation by the state and by cities under powers granted them by the state. (R. S. ch. 16.) They are prohibited from allowing minors to play upon their tables. (R. S. § 715.) *Villages may prohibit them*

*altogether.* (R. S. § 1672.) Public billiard-halls are regarded by many as vicious in their tendencies, leading to idleness, gambling and other vices." (*The City of Tarkio .v. Cook,* 120 Mo. 1, 10, 25 S. W. 202, 203, 41 Am. St. Rep. 678.)

In Freund on Police Power, section 193, it is said: "The legislative power to suppress the keeping of such places for hire does not appear to be subject to doubt."

Appellant asks this court to substitute its judgment for that of the legislature and to declare that quiet pool-halls in small towns cannot be suppressed. The scope of judicial authority in such matters is discussed fully in the case of *The State v. Durein,* 70 Kan. 1, 19, *et seq.,* 80 Pac. 987. This court is satisfied that the suppression of pool-tables is a subject germane to the peace, order and good morals of cities of the third class in this state, and that neither the legislature nor the city council has transcended its power.

Finally it is argued the ordinance is void because it discriminates against keepers of pool-tables for hire. The distinction made by the ordinance is merely that between public keepers and private owners, and is natural, reasonable and just. A private pool-table kept for the owner's amusement and benefit, like a piano or an apparatus for taking exercise, cannot, according to the leading case of *Stevens and Woods v. The State,* 2 Ark. 291, 35 Am. Dec. 72, be interfered with. The legislature did not have such tables in contemplation when the statute was enacted. Only those which are opened to the general public for hire, and which therefore bear a relation to the public weal, are to be reached, and the ordinance merely carries out the purpose of the statute.

The judgment of the district court is affirmed.

All the Justices concurring.