No. 28,344.

The City of Wichita, *Appellant*, v. The Wichita Gas Company, *Appellee.*

(271 Pac. 270.)

Opinion filed November 3, 1928.

*A. V. Roberts, Vincent F. Hiebsch* and *Roger P. Almond,* all of Wichita, for the appellant.

*Fred S. Jackson,* of Topeka, and *Robert D. Garver,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

Dawson, J.: The city of Wichita brought this action in the district court of Sedgwick county against the Wichita Gas Company, praying for a declaratory judgment to determine the validity of one of its city ordinances under which a franchise for the use of the streets of Wichita for a gas-distributing plant had been granted to defendant's predecessor, the Kansas Gas and Electric Company.

The franchise was granted in February, 1922, and the corporate duties imposed by its terms were promptly undertaken by the grantee, and the financial investment in defendant's gas-distributing plant affected by and dependent on the validity of the franchise is alleged to be in excess of two million dollars.

The ordinance granting the franchise was enacted under authority of chapter 94 of the Session Laws of 1921, the title of which reads:

"An act relating to the franchises of interurban railroad companies and corporations operating lines for the transmission of electricity, amending section 836 of the General Statutes of Kansas for 1915, and repealing section 836."

The statute enacted under this title reads:

"SECTION 1. That section 836 of the General Statutes of Kansas for 1915 is amended to read as follows: Sec. 836. All incorporated cities in the state of Kansas into or through which any interurban railroad may have heretofore been built, or into or through which any interurban railroad may propose to build a line of interurban railroad, or into or through which any corporation operating a system for the transmission of electric current between two or more incorporated cities in the state shall have heretofore built, or into or through which any such corporation may propose to build its transmission lines, are hereby authorized and empowered upon such terms and conditions, as any such city may by ordinance prescribe, to grant franchises to such interurban railroad companies and transmission corporations for any public utility purposes for which they are or hereafter may be incorporated, for a period not greater than the time for which the charter under which said company or corporation is then operating shall continue to run, but in no case to exceed 35 years: *Provided,* That such franchise shall not be granted until notice of the proposition to grant the same has been given for twenty days by publication in some newspaper in general circulation in such city, and if within said twenty days 10 per cent of the legal electors petition such city authorities to submit the same to a vote of the electors of the city, such city authorities shall submit said franchise proposition to a vote of the people before such franchise be granted and be governed by result of such vote: *Provided,* That no such election shall be held until a certificate shall be procured from the public utilities commission of the state of Kansas, or from the state regulatory body at the time exercising control over common carriers and public utilities, that public necessity and convenience requires the construction of such improvements or the furnishing of such public services: *Provided,* That nothing in this act shall be construed as applying to telephone and telegraph companies."

This statute without change was incorporated in the general revision of the statutes authorized by the legislature of 1921 and reenacted by the legislature of 1923 (Laws 1921, ch. 207; Laws 1923, ch. 144), and now appears in R. S. 12-824.

It will be noted that the statute of 1921 (ch. 94) purported to amend section 836 of the General Statutes of 1915, which read:

"All incorporated cities in the state of Kansas, into or through which any interurban railroad may have heretofore been built, or into or through which any interurban railroad may propose to build a line of interurban railroad, are hereby authorized and empowered, upon such terms and conditions as such city may by ordinance prescribe, to grant franchises to such interurban railroad companies for a period not greater than the time for which the charter under which said company is then operating, shall continue to run: *Provided,* That such franchise shall not be granted until notice of the proposition to grant the same has been given for 20 days, by publication in some newspaper of general circulation in such city, and if within said 20 days, 10 per cent of the legal electors petition such city authorities to submit the same to a vote of the electors of the city, such city authorities shall submit said franchise proposition to a vote of the people before such franchise be granted, and be governed by the result of such vote: *Provided,* That no such election shall be held until a certificate shall be procured from the public utilities commission of the state of Kansas that public necessity and convenience requires the construction of such improvements, or the furnishing of such public service."

When the city ordinance granting the franchise to defendant's predecessor was pending before the city commission that body caused a notice of the proposition to be published in the official city paper on January 26, February 2, February 9 and February 16, 1922. The published notice contained an exact copy of the proposed franchise ordinance itself. On February 21, 1922, the proposed ordinance was formally passed by the city commission and published February 23, 1923.

Pursuant to its terms the Kansas Gas and Electric Company proceeded to occupy the streets of the city of Wichita with the distributing system, and it and its present successor have expended many thousands of dollars on the faith of the franchise thus granted.

Plaintiff based its action in the trial court upon two main grounds, which it reasserts in this appeal, viz.:

(a) That the statute purporting to authorize the granting of the franchise is unconstitutional.

(b) That the ordinance itself is invalid because not published as prescribed by law.

Noting these points in order, it is contended that the title to the act of 1921, chapter 94, quoted above, did not comply with section 16 of article 2 of the constitution, which provides that the subject matter of a statute shall be clearly expressed in its title.

In *State, ex rel., v. Dawson,* 90 Kan. 839, 841, 136 Pac. 320, it was said:

"While section 16 of article 2 of the constitution requiring the single subject of an act to be clearly expressed in its title is not so frequently invoked as formerly, it is still as binding as ever."

But in the many lawsuits where this clause of the constitution has been considered it has been settled for good and all that it is never to be applied in a captious spirit to overthrow a legislative enactment. In *Lynch v. Chase*, 55 Kan. 367, 40 Pac. 666, the validity of chapter 239 of the Laws of 1889 was challenged on the ground that its title did not conform to this constitutional requirement. The title read: "An act providing for the appointment of committees to investigate the affairs of state institutions and conduct of officers." In the body of the act provision was not only made for the appointment of such committees, but matters of procedure for the conduct of their functions were prescribed; power was granted to compel the attendance of witnesses and to require the production of papers; authority was granted to hire employees; per diem and mileage were fixed; and duties imposed on the governor and attorney-general in accordance with the recommendations of the committees. In upholding the sufficiency of the title of this act this court said:

"It is urged that the act of 1889, under which the investigation was made, is unconstitutional, for the reason that the title does not fairly indicate and cover the provisions of the act. The title is, 'An act providing for the appointment of committees to investigate the affairs of state institutions and conduct of officers.' It has been repeatedly held that section 16 of article 2 of the constitution is not to be enforced in any narrow or technical spirit, but that a liberal interpretation should be placed upon the language employed in the title to express the subject of the act. The provision, as has been held, must be applied in a fair and reasonable way, so that it will not embarrass or defeat the proper and legitimate exercise of the legislative functions. It is not necessary that the title should be an abstract of the entire act, but it is deemed to be sufficient if the title fairly indicates, though in general terms, its scope and purposes. Everything connected with the main purpose and reasonably adapted to secure the objects indicated by the title may be embraced in the act, without violating the constitutional inhibition." (p. 375.)

In *City of Wichita v. Sedgwick County*, 110 Kan. 471, 473, 204 Pac. 693, where the infirmity of a statute because of the insufficiency of its title was urged, it was said:

"Look at the general act of 1876 relating to public education (ch. 122). Its title is: 'An act for the regulation and support of common schools.' Under this simple title there lies the entire statutory foundation of our public-school system, covering not only such matters as schools and school districts, and school officers and their duties, but matters so distantly related thereto as the disposition of the federal land grants for school purposes, and including such details as the mode of settlement and acquisition of school lands, duties of the state auditor and governor in relation to the issue of land patents, criminal

proceedings and penalties for waste or trespass on school-land properties, etc. But though the title to this act gives no hint of these far-reaching details, yet because they are mere details of the general scheme of the act for the effective regulation and support of common schools, and are germane and pertinent to the principal purpose of the act, they are not subject to constitutional infirmity under section 16 of article 2."

Tested by the foregoing analogous precedents it cannot be held that the statute of 1921 which authorized the granting of the franchise now held by defendant is invalid by reason of constitutional infirmity in its title. Before leaving this point, however, two other observations should be made. The title to the act of 1921 is drawn according to a form in very common use by the legislature, and if such form of title did not satisfy the requirement of section 16 of article 2 a very considerable part of all the legislation of this state would have to be held invalid. Another angle to this discussion is that the statute of 1921 was incorporated in the general revision of 1923, and now appears therein as R. S. 12-824. Therefore, in common with all other statutes included in that revision, it became immune to any attack based upon mere insufficiency of title, irregularity in previous legislative history, and such like formal defects. (*State, ex rel., v. Davis, Governor,* 116 Kan. 663, 667, 668, 229 Pac. 757; *Kaw Valley Drainage District v. Kansas City,* 119 Kan. 368, 239 Pac. 760; *Lemen v. Kansas Flour Mills Co.,* 122 Kan. 574, 253 Pac. 547.)

Turning next to the matters urged against the ordinance and the franchise granted by its terms, the statute provides that a franchise granted under this act (Laws 1921, ch. 94; R. S. 12-824) may run for any period not greater than the corporate life of the charter, "but in no case to exceed 35 years." Neither the ordinance nor the franchise fails to conform to that provision.

It is urged, however, that the ordinance is invalid because it was not published for three consecutive weeks as provided by R. S. 13-2801. But that section is not applicable. R. S. 12-824 prescribes its own procedure for publication. The act provides:

"*Provided,* That such franchise shall not be granted until notice of the proposition to grant the same has been given for twenty days by publication in some newspaper in general circulation in such city, and if within said twenty days 10 per cent of the legal electors petition such city authorities to submit the same to a vote of the electors of the city, such city authorities shall submit said franchise proposition to a vote of the people before such franchise be granted and be governed by result of such vote."

The notice was given and the right of the electors to have the franchise submitted to their determination was strictly observed; and it should be critically noted that by the terms of the statute this notice and the right conferred upon the electors are to precede the granting of the franchise, not to follow the enactment of the franchise ordinance as is contemplated in the granting of franchises under R. S. 13-2801 and the referendum prescribed by its terms. R. S. 13-2801 is a much older statute than R. S. 12-824, and if there was not a fair field for the operation of both statutes, the later enactment, historically considered, would, of course, prevail. (*Arkansas City v. Turner, State Auditor*, 116 Kan. 407, 226 Pac. 1009; *Great Western Portland Cement Co. v. Public Service Comm.*, 121 Kan. 531, 247 Pac. 881.)

The foregoing disposes of the main questions presented by this appeal; but before concluding, this court feels bound to observe that this action scarcely falls within the spirit and intent of the declaratory judgment act. (R. S. 60-3127 *et seq.*) When the city granted the franchise to defendant's predecessor and before any material obligation or expense was incurred under its terms, an action for a declaratory judgment might appropriately have been instituted to determine the validity of the ordinance and franchise for the benefit of all concerned. That is what the legislature intended when it declared the purpose of the declaratory judgment statute, viz.:

"This act is declared to be remedial; its purpose is to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor; and it is to be liberally interpreted and administered, with a view to making the courts more serviceable to the people." (R. S. 60-3132.)

The declaratory judgment act was not designed to question rights which have been exercised for years without controversy and on the faith of which vast sums of money have been expended by a grantee to discharge its corporate duties under the terms of the franchise. In the trial court defendant questioned the propriety of such action under these circumstances, but the ruling thereon is not properly before us for review. However, its importance is so obvious that it is proper to note it herein with a *quære*.

The judgment is affirmed.