No. 41,638

THE STATE ASSOCIATION OF CHIROPRACTORS, and S. C. SUTHERLAND, President; JOHN ABLE, Vice-President; HAROLD COLE, Secretary-Treasurer; R. L. FREDRICH, A. E. SMITH, E. O. MORRIS of Chanute, H. D. CELLERS of Topeka, Members of the Board of Directors thereof as officers of said association and in their own proper persons, *Appellants*, v. JOHN ANDERSON, JR., Attorney General of the State of Kansas, *Appellee*.

(348 P. 2d 1042)

Opinion filed January 23, 1960.

*William A. Smith,* of Topeka, argued the cause, and *David W. Carson, John K. Dear, William Mahoney* and *Hylton Harman,* all of Kansas City, were with him on the brief for appellants.

*Robert E. Hoffman,* Assistant Attorney General, argued the cause, and *John Anderson, Jr.,* was with him on the brief for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a declaratory judgment action by chiropractors attacking the constitutional validity of the Basic Science Act (G. S. 1957 Supp., 65-2112 to 65-2125) and the Healing Arts Act (G. S. 1957 Supp., 65-2801 to 65-2890). The district court of Shawnee County in which the action was filed sustained a demurrer to the amended petition, and the chiropractors have appealed.

The grounds upon which the amended petition was attacked by the demurrer are:

"1. That said amended petition discloses upon its face that plaintiffs have no legal capacity to sue in that said amended petition discloses that said plaintiffs have not been injured by the statutes complained of.

"2. That said amended petition does not state facts sufficient to constitute a cause of action."

The amended petition alleges the action to be brought in the name of the State Association of Chiropractors and its named officers in their official capacity as officers of the Association to carry out and make effective the object of the Association, *and also in their own proper persons to secure redress for what they allege to be an invasion of their own personal rights* and to secure to themselves certain rights guaranteed them by the terms and provisions of the Constitution of the United States, and the Constitution of the State of Kansas, and prevent themselves from suffering irreparable damages and incurring criminal and civil liability. The amended petition then alleges:

"2. That John Anderson is the duly elected, qualified and acting Attorney General of the State of Kansas, with his offices at the State House at Topeka, Kansas, that Chapters 343 and 344 of the session for 1957 were enacted at that session of the legislature of Kansas and by the provisions thereof, became effective July 1, 1957, that John Anderson as Attorney General has certain powers and duties conferred upon him by the terms and provisions of Chapters 343 and 344, that when the Attorney General performs his duties as en-

joined upon him by the two acts, great loss and damage to plaintiff Association, to the individuals named as plaintiffs, and to all practicing chiropractors will result; they will be deprived of equal protection of the laws, their property will be taken without due process and they will be deprived of the right to contract all in violation of the provisions of the Constitution of the United States and the Constitution of the State of Kansas, from which they have no adequate remedy at law.

"3. Plaintiffs allege that an actual controversy exists between plaintiffs on the one hand and defendant on the other as to the validity of Chapters 343 and 344 of the legislature for the session of 1957, since plaintiffs have been advised and believe and therefore allege the fact to be that these bills both each violate the Constitution of the United States and that of the State of Kansas, and confer no real power whatever, as to chiropractors, on the Attorney General; the defendant contends, on the other hand, that the two acts are presumed to be valid and not to violate the constitution, either state or federal, and unless and until such acts are held to be invalid, it will be his duty to perform the duties enjoined upon him by the two acts and he intends to perform and is performing his duties in the premises; that [it] is to the advantage of all parties that the question of the constitutionality of the two bills be finally adjudicated under terms and provisions of G. S. 1949, 60-3127, to 60-3132 (a), commonly known as the Declaratory Judgment Act, without the uncertainty and insecurity attendant upon controversies over legal rights and without requiring plaintiffs to invade the rights of any official or to violate any statute, or any order, rule, or regulation so as to require the defendant to bring quo warranto, or a criminal action against one of plaintiffs or some member of the association or that some qualified person seeking to be admitted to practice chiropractic be compelled to bring an action against the healing arts board to be permitted to take the examination. To obtain such an end, this section [action] is brought to secure a declaratory judgment pursuant to G. S. 1949, 60-3127 to 60-3132 (a).

"4. Chiropractors are taught in their schools that chiropractic was, and is, a system of adjusting subluxated vertebrae of the spinal column and any other misplaced tissue, to achieve normal functional and structural integrity of the nervous system, for the elimination of disease and the restoration of health; and that a cause of disease is any misplaced tissue or vertebral subluxation which produces pressure upon nerves and thus interferes with normal transmission of vital nerve force, and that the chiropractic objective is to locate the point in the body where nerve pressure exists, due to any misplaced tissue or subluxated vertebra and, through proper adjustment, restore such misplaced tissue or subluxated vertebra to its normal position, thus relieving the pressure on the nerves involved and removing the cause of disease in the body.

"5. That there is a dispute and difference between the medical doctors and osteopaths on the one hand, and the chiropractors on the other, which arises from basic and fundamental differences between the concept of medicine and osteopathy on the one hand, and chiropractors on the other, as to the cause, treatment and cure of all sorts of bodily ills and diseases; that there are many points in the sciences of anatomy, physiology, chemistry, bacteriology, and pathology, where they, as taught and practiced in the University of Kansas,

and Universities of equal standing and as taught in the regularly recognized schools of chiropractic, differ so widely and radically that to compel applicants for license to practice chiropractic to receive passing grades in an examination in those subjects given by a person with a doctorate degree from a school such as Kansas University or a university of equal standing, would be so unreasonable and arbitrary as to render the act so providing void.

"6. Chapter 343 provides for a board, to be appointed by the Governor, and gives it power to regulate all the healing arts, meaning particularly the practice of medicine and surgery, osteopathy and chiropractic, such board to be composed of five doctors of medicine, three osteopaths and three chiropractors. The act also provides that before an applicant may be permitted to take the examination for a license, in any one of the healing arts, he must present to the board a certificate of proficiency in anatomy, physiology, chemistry, bacteriology, and pathology, issued by the board of basic science examiners of this or any other state or territory or the District of Columbia.

"7. Chapter 344 provides for the appointment, by the Governor, of what the chapter terms, a state board of basic science examiners, each member of which shall hold a doctorate degree and at the time of his appointment be actively engaged within the field in which he will examine, and be a member of the faculty of a state supported institution of higher learning in this state, of which no one school shall have over two members on the board; the act further provides for the board giving examinations in the basic sciences and for the issuance of basic science certificates to any applicant who shows that he has a comprehensive knowledge of the basic sciences as shown by his passing in the examinations; such a certificate is the one an applicant to be licensed to practice any one of the healing arts must furnish the healing arts boards, showing his ability in the basic sciences before he may be permitted to take the examination before that board. The same basic science certificate is required of applicants to practice medicine, osteopathy or chiropractic."

The amended petition then continues for many pages through paragraph 27 alleging in detail points with respect to the various sections of the Healing Arts Act and the Basic Science Act enacted by the Laws of 1957, Chapters 343 and 344 respectively, effective July 1, 1957.

Incidental to a declaratory judgment the amended petition seeks to enjoin the Attorney General from enforcing the two acts. (See, *State, ex rel., v. Shanahan*, 178 Kan. 400, 286 P. 2d 742.)

It does not appear that the Attorney General attacked the amended petition in the district court by a motion to dismiss on the ground the plaintiffs had no legal capacity to sue. This question is, however, raised by the first ground of the demurrer. (See, *Grolier Society v. Foster*, 110 Kan. 306, 203 Pac. 920.)

Insofar as the amended petition discloses the State Association of Chiropractors is a voluntary association of persons engaged in the chiropractic profession and as such, not obviously being a

natural person, a corporation or a partnership whose membership was disclosed, has no legal capacity as a voluntary association or society to sue. (*Grolier Society v. Foster*, supra, and authorities cited therein.)

Insofar as the action is brought in the name of the officers of the Association in their official capacity *as officers* of the Association they must be deemed to be in the same position as the Association itself, since they can only be acting for the Association in such capacity.

The Attorney General argues, insofar as the officers of the Association are named *in their capacity as natural persons* to secure redress for an invasion of their personal rights, they may not maintain the action because the amended petition shows on its face all of *said individuals* are or were at all times licensed to practice chiropractic under the provisions of the two acts, and hence cannot be said to be injured by any of the provisions complained of in said acts. It is argued as natural persons licensed to practice chiropractic they were authorized to apply for a renewal license as provided in the Healing Arts Act (G. S. 1957 Supp., 65-2809), and by reason thereof the provisions complained of, relating to the taking of examinations before a board made up of a majority of medical doctors and other related provisions, could have no impact upon them.

The Attorney General further calls our attention to G. S. 1957 Supp., 65-2112 of the Basic Science Act which provides in part:

"Nothing in this act shall be interpreted to apply to any person who is licensed to practice the healing arts, or any branch thereof, in this state at the time this act shall take effect; . . ."

The amended petition, however, alleges Section 36 of the Healing Arts Act (G S. 1957 Supp., 65-2836) provides the grounds upon which a license may be revoked or suspended. Among these is "Failure to take some form of postgraduate work each year *as required by the board*." (Emphasis added.) Attention must be called to the fact that the provision cited by the Attorney General in the Basic Science Act is no part of the Healing Arts Act.

We think it clear by the provisions of the foregoing section of the Healing Arts Act (65-2836, *supra*) alone, taking into consideration the allegations of the amended petition heretofore recited (there being many others to which reference has not been made), the appellants, suing in their capacity as individuals licensed to practice chiropractic, are vitally affected by the Healing Arts Act

and the Basic Science Act, since the two acts are interwoven with each other in various ways. These appellants, as individuals, are parties in interest. (G. S. 1949, 60-401.) Under the circumstances here presented, where the plaintiff litigants are numerous one or more of their number may sue for all. (G. S. 1949, 60-413; *City of Independence v. Hindenach,* 144 Kan. 414, 61 P. 2d 124; *Grolier Society v. Foster,* supra; see, also, *Depew v. Wichita Retail Credit Ass'n,* 141 Kan. 481, 42 P. 2d 214; and *Kern v. Newton City Commissioners,* 147 Kan. 471, 77 P. 2d 954.)

Does the amended petition state a cause of action?

The amended petition was framed primarily for the purpose of obtaining an adjudication under the Declaratory Judgment Act. (G. S. 1949, 60-3127 to 60-3132, incl.) It is clear the district court has original jurisdiction in declaratory judgment actions. It is expressly granted jurisdiction in such cases involving the interpretation of statutes, whether or not consequential relief is claimed. (G. S. 1949, 60-3127.) It has long been settled courts also have jurisdiction, under the Declaratory Judgment Act, to determine the validity of statutes or ordinances before a party undertakes to act in apparent violation thereof. That is the purpose and intent of the remedial relief contemplated by the act. (G. S. 1949, 60-3132; *Hyde Park Dairies v. City of Newton,* 167 Kan. 730, 208 P. 2d 221; *State, ex rel., v. Shanahan,* 178 Kan. 400, 286 P. 2d 742; and see, *School District v. Sheridan Community High School,* 130 Kan. 421, 286 Pac. 230.)

The provisions of 60-3132, *supra,* read:

"This act is declared to be remedial; its purpose is to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor; *and it is to be liberally interpreted and administered, with a view to making the courts more serviceable to the people."* (Emphasis added.)

The procedure taken by the appellants herein against the Attorney General to contest the validity of the Healing Arts Act and the Basic Science Act has previously been used. It was approved by this court in *Capital Gas & Electric Co. v. Boynton,* 137 Kan. 717, 22 P. 2d 958. There ten of the eleven cases consolidated in the appeal before the court were actions for injunction. The petitions alleged that Chapter 238 of the Laws of 1931 were unconstitutional and void for nine reasons, and that the Attorney General and the respective county attorneys were threatening to enforce the law

which would result in a great loss, injury and possibly deprivation of liberty, and that there was no adequate remedy at law. The petitions concluded with a prayer that the court "find that an actual controversy exists between the parties and that a declaratory judgment be entered determining and adjudging" such act to be unconstitutional and void, and that the defendants and their agents and employees be enjoined and restrained from enforcing or attempting to enforce the provisions and penalties of the statute. Answers were filed which admitted many of the formal allegations of the petitions but which denied the law was unconstitutional or void for the reasons assigned.

The statutory enactment there under attack was held to be unconstitutional and void because it was in violation of the Fourteenth Amendment to the Constitution of the United States in that it denied certain individuals, firms and corporations the equal protection of the law. The court said:

"There is no question in these cases but that an actual controversy existed between these parties at the time of the trial before the district judge and still exists, so that the determination of the issues here involved comes properly under the provisions of the declaratory-judgment statute, R. S. 60-3127 to 60-3132." (p. 722.)

Prior to the foregoing decision in *City of Wichita v. Wichita Gas Co.*, 126 Kan. 764, 271 Pac. 270, the court in a dictum recognized:

". . . When the city granted the franchise to defendant's predecessor and before any material obligation or expense was incurred under its terms, an action for a declaratory judgment might appropriately have been instituted to determine the validity of the ordinance and franchise for the benefit of all concerned. That is what the legislature intended when it declared the purpose of the declaratory judgment statute, . . ." (p. 769.)

While a demurrer is rarely used in attacking a petition for a declaratory judgment, when a party elects to so employ a demurrer the test applied in determining the sufficiency of the pleading under attack is whether such pleading sets forth facts showing an actual controversy concerning some matter covered by the statute, G. S. 1949, 60-3127. If an actual controversy is alleged in a petition for a declaratory judgment, it is the duty of the district court to overrule the demurrer to the petition and proceed with the cause in accordance with the provisions of G. S. 1949, 60-3127 to 60-3132, incl. (*School District v. Sheridan Community High School*, supra; *City of Cherryvale v. Wilson*, 153 Kan. 505, 112 P. 2d 111; *Hurst v. Brown*, 166 Kan. 496, 203 P. 2d 246; *Hyde Park Dairies v. City of*

*Newton,* supra; *Stalnaker v. McCorgary,* 170 Kan. 9, 223 P. 2d 738; *Simmons v. Reynolds,* 179 Kan. 785, 298 P. 2d 345; and *Bodle v. Balch,* 185 Kan. 711, 347 P. 2d 378.) It was said in *City of Cherryvale v. Wilson,* supra:

"It is rare that a demurrer is an appropriate pleading for the defendant to file to a petition for a declaratory judgment. Assuming there is an actual controversy between the parties, the petition should state the facts out of which the controversy arose, should state clearly the view or claim of plaintiff, and also state clearly the view or claim of the defendant, and the court should be asked to adjudicate the controversy. The appropriate pleading for defendant to file is an admission that the controversy arose from the facts stated by plaintiff, and that plaintiff's contention is correctly stated; also, that defendant's condition is correctly stated, if, of course, defendant agrees that the matters are so pleaded. If defendant thinks the facts giving rise to the controversy are not accurate or fully stated, or that the contention of the plaintiff or that the contention of the defendant is not accurately or fully stated, his answer should plead the facts and the contentions as he understands them to be. If defendant pleads the facts and the contention is contrary to that pleaded by plaintiff, plaintiff by reply should either admit those, or deny them. Normally, a declaratory judgment action is not well suited to a case in which there is a controversy as to how the contentions of the parties arose, or as to what they are; these things should be agreed upon in the pleadings, or some other form of an action should be brought." (pp. 510, 511.)

The foregoing language was quoted with approval in *Hyde Park Dairies v. City of Newton,* supra; and *Stalnaker v. McCorgary,* supra.

It is the position of the Attorney General that the amended petition does not allege an actual controversy arising out of any facts upon which particular sections of the Healing Arts Act and the Basic Science Act operate, or are operative, but alleges only a disagreement between the appellants and the appellee on the legal question of the validity of said acts. We are cited to *Williams v. Flood,* 124 Kan. 728, 262 Pac. 563; *Garden City News v. Hurst,* 129 Kan. 365, 282 Pac. 720; and *Boeing Airplane Co. v. Board of County Comm'rs,* 164 Kan. 149, 188 P. 2d 429. In our opinion these cases have no application to the facts presently before the court.

In the *Williams* case it was sought to prosecute an action under the declaratory judgment law against a justice of the peace to have determined the power of such justice to issue an order of attachment and a garnishee summons without a bond having first been filed. The court held no controversy was shown by the petition except as to a question of law. This was not a justiciable matter under the declaratory judgment law, since controversies of that character could not be determined by this court except on an appeal

in the action in which the controversy arose. It was said controversies involving the interpretation of statutes may be settled under the declaratory judgment law, but those controversies must include rights claimed by one of the parties and denied by the other. There the plaintiff was not claiming any right and the defendant was not denying the plaintiff any right.

Similarly, in *Garden City News v. Hurst,* supra, the publishers of a weekly newspaper made the probate judge the only defendant in an action for a declaratory judgment as to the interpretation of a statute giving the requirements of newspapers entitled to publish legal notices. It was held no actual controversies existed between the parties as are required for a declaratory judgment. The court there said it was easy to see how the plaintiffs were interested in having a favorable construction placed upon the statute, but no plausible reason or suggestion had been ventured as to the probate judge having any interest or any obligation, liability or privilege resulting from a decision in the matter involved.

In *Boeing Airplane Co. v. Board of County Comm'rs,* supra, a demurrer was sustained in a declaratory judgment action by a divided court. The petitioner was a *third party* by reason of a contract entered into with the owner of real estate and sought to have determined in a declaratory judgment action the validity of taxes against real estate which it did not own. It was held there must be at least two parties who can assert rights, which have developed or will arise against each other, before an actual controversy can exist which is justiciable under the Declaratory Judgment Act.

The appellants assert the controversy has its roots in the radical difference in the basic concepts of the treatment and cure of human ills between medical doctors and modern-day osteopaths on the one hand and chiropractors on the other.

From the foregoing basic contentions of the respective parties they spring into a full-fledged discussion of the constitutional questions involved by taking up section after section of the Healing Arts Act and the Basic Science Act in their respective briefs. We refuse to be led into a determination of constitutional questions by these tactics. The factual contentions of the respective parties must appear from *their pleadings or stipulations* and not from the briefs.

The essence of an action under the Declaratory Judgment Act is the existence of an actual controversy. We have examined the amended petition fully, and we do not hesitate to state its allega-

tions make it clearly appear there is an actual controversy between the parties with respect to the constitutionality of the Healing Arts Act and the Basic Science Act. The amended petition is therefore sufficient against a demurrer.

If a petition drawn pursuant to the Declaratory Judgment Act discloses an actual controversy exists with respect to any subject matter within the purview of the act, the petitioner has made the initial showing which entitles him to a hearing on the remedial relief sought. Such a petition is sufficient to require the defendant to move forward with an answer. It is not necessary that the petition disclose all the facts and contentions which may ultimately become involved in the remedial relief sought under the provisions of 60-3132, *supra*. Whether the petitioner ultimately shall be entitled to such relief is to be determined from a full disclosure of all the material facts and contentions of the respective parties. These should appear from stipulations of the parties or purely from matters clearly alleged in the pleadings. (*Hyde Park Dairies v. City of Newton*, supra.)

With respect to the foregoing rule it was said in the *Hyde Park Dairies* case:

"The soundness of this general rule seems obvious. While there may be cases in which no facts a defendant might plead and no contentions he might make could possibly affect the interpretation or validity of a statute or ordinance, we do not desire to so conclude in advance of an answer and hearing in this case. We are convinced it was not the intention of the declaratory judgment act to prejudge matters which might become material in determining the propriety or justice of the relief sought. This it would seem is doubly true where the constitutionality of a statute or ordinance affecting the public interest is involved." (p. 732.)

This appeal is limited solely to the amended petition herein. Issues have not been joined by the parties and the trial court has rendered no declaratory judgment in the case, notwithstanding the fact that the parties attempt to enlarge the scope of our review by arguing the merits and have us prejudge matters which might become material when the case is ultimately presented for a declaratory judgment. These are matters for the trial court to determine after the issues are joined and the facts are either stipulated or presented to it for final determination, and not for this court to determine upon a demurrer to the amended petition.

The order of the trial court sustaining the appellee's demurrer to the amended petition is reversed with directions to proceed in accordance herewith.