No. 56,774

MELVIN MOODY d/b/a FOXY LADIES ATHLETIC CLUB, *Appellant*, v. BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SHAWNEE, and GENE OLANDER, IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY, KANSAS THIRD JUDICIAL DISTRICT, and ED RITCHIE, IN HIS OFFICIAL CAPACITY AS SHERIFF OF SHAWNEE COUNTY, *Appellees*.

(697 P.2d 1310)

Opinion filed April 5, 1985.

*Donald R. Hoffman*, of Humpage, Berger and Hoffman, of Topeka, argued the cause and was on the brief for appellant.

*Barbara Bennington Hogberg*, Shawnee County sheriff's department, argued the cause, and *Joseph W. Zima*, assistant Shawnee County counselor, and *Gene M. Olander*, Shawnee County district attorney, were with her on the brief for appellees.

The opinion of the court was delivered by

MILLER, J.: The plaintiff, Melvin Moody, d/b/a Foxy Ladies Athletic Club, appeals from the final decision and order of the District Court of Shawnee County in this declaratory judgment action, upholding the constitutionality of Shawnee County Home Rule Resolution No. HR 83-12 and denying injunctive relief. Defendants and appellees are the Board of County Commissioners of Shawnee County; Gene M. Olander, the district attorney; and Ed Ritchie, the sheriff.

HR 83-12 was adopted by the Board of County Commissioners of Shawnee County on October 12, 1983. No challenge as to the regularity of the adoption proceedings is made. The resolution is captioned: "A RESOLUTION PROVIDING FOR THE LI-

CENSING AND REGULATION OF ADULT ENTERTAIN-
MENT STUDIOS IN SHAWNEE COUNTY, KANSAS, PRO-
SCRIBING CERTAIN ACTS, AND PROVIDING PENALTIES
FOR VIOLATIONS THEREOF." The findings of the board and
the purposes of the act are stated in Section 1 as follows:

"(a) The Board of County Commissioners of Shawnee County, Kansas, finds:

"(1) That heterogeneous masturbatory and oral sex services are being
provided for a consideration at adult entertainment studios in
Shawnee County.

"(2) That offering and providing such services creates conditions that
generate prostitution and other crimes.

"(3) That employees of adult entertainment studios have been con-
victed of prostitution occurring in adult entertainment studios
and other places in Shawnee County.

"(4) That the continued unregulated operation of adult entertainment
studios would be detrimental to the general welfare, health, and
safety of the citizens of Shawnee County.

"(b) It is the purpose of this Resolution to promote and secure the general
welfare, health, and safety of the citizens of Shawnee County."

The Resolution is quite lengthy and will not be set out in full.
Pertinent portions will be quoted or summarized as necessary
later in this opinion. The Resolution defines adult entertainment
studio and provides rigid standards for the licensing thereof. It
also defines entertainers who provide entertainment within the
studios and establishes rigid standards for permits, which must
be secured by each entertainer. It establishes fees for licenses
and permits, and for the renewal thereof. It sets forth provisions
by which licenses or permits may be revoked upon notice and
hearing. It establishes hours of operation for the studios, and
states the responsibilities of the operators. It prohibits various
unlawful sexual acts. It provides penalties (a fine not exceeding
$1,000 or confinement in the county jail for not more than six
months, or both) for violation of various sections of the Resolu-
tion. It contains a severability clause. Finally, the Resolution was
to become effective thirty days after its publication.

A few days prior to the effective date plaintiff commenced this
declaratory judgment action and sought a temporary restraining
order. Upon hearing counsel, the trial court temporarily re-
strained the enforcement of the Resolution. Thereafter, counsel
submitted briefs and made oral argument; and approximately
ninety days after the petition was filed the trial court determined

the action on its merits, upholding the Resolution and dissolving the temporary order. The trial court's carefully prepared memorandum—containing conclusions of law with which we are in substantial agreement—reads as follows:

## "CONCLUSIONS OF LAW

"1. Declaratory judgments are controlled by K.S.A. 60-1701 (1983). The function of the statute is to provide speedy and flexible methodology for the determination of rights and obligations in cases of 'actual controversy' where there is 'actual antagonistic assertion and denial of right.' See 5 Vernon's Kan. Stat. Ann. § 60-1701, p. 488 (1967).

"2. It has long been settled in Kansas under the Declaratory Judgment Act that courts have the jurisdiction to determine the validity of statutes, resolutions or ordinances before a party undertakes to act in apparent violation thereof. That is the purpose and intent of the remedial relief contemplated in the act. *Acupuncture Society of Kansas v. Kansas State Bd. of Healing Arts,* 226 Kan. 639, 647, 602 P.2d 1311 (1979); *State Assoc. of Chiropractors v. Anderson,* 186 Kan. 130, 135, 348 P.2d 1042 (1960).

"3. The general rule of standing is that unconstitutional governmental action can only be challenged by a person directly affected and such a challenge cannot be made by invoking the rights of others. *State v. Thompson,* 221 Kan. 165, Syl. ¶ 4, 558 P.2d 1079 (1976). However, a plaintiff may raise the rights of interrelated persons when attacking the validity of an act on its face. *Kansas Retail Trade Co-op v. Stephan,* 522 F.Supp. 632, 636 (D. Kan. 1981). In addition, there need not be an actual criminal prosecution underway for the case or controversy requirement to be met so long as the threat of criminal prosecution is not speculative or imaginary. *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974).

"4. There is a special rule of standing when the statute involved purports to regulate or proscribe the rights of speech or press protected by the First Amendment. Although a statute may be neither vague, overbroad, nor otherwise invalid as applied to the conduct charged against a particular party, he is permitted to raise its vagueness or unconstitutional overbreadth as applied to others. And if the law is found deficient

in one of these respects, it may not be applied to him either, until and unless a satisfactory limiting construction is placed on the statute. *State v. Allen & Rosebaugh*, 1 Kan. App. 2d 32, 42, 562 P.2d 445 (1977), citing from *Coates v. City of Cincinnati*, 402 U.S. 611, 619-20, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971) [White, J., dissenting].

"5. The board of county commissioners is given home rule powers to 'transact all county business and perform all powers of local legislation and administration it deems appropriate' subject to limitations, restrictions and prohibitions that have no bearing on this case. K.S.A. 19-101a (1983 Supp.).

"6. A state possesses an inherent power to regulate certain businesses and professions for the good of society. This police power gives a state the right to act to protect and promote public health, safety, morals, peace, quiet and law and order. *State ex rel. Schneider v. Liggett*, 223 Kan. 610, 614-15, 576 P.2d 221 (1978). The police power of the state extends not only to the protection of the public health, safety and morals, but also to the preservation and promotion of the public welfare. *State v. Consumers Warehouse Market*, 183 Kan. 502, 508, 329 P.2d 638 (1958). If a statute falls within the exercise of the police power of the state, those subject to that law must submit to its provisions, whatever the effect may be upon property or business. *Burlingame v. Thompson*, 74 Kan. 393, 394, 86 P. 449 (1906); *State ex rel. Stephan v. Lane*, 228 Kan. 379, 384, 614 P.2d 987 (1980).

"7. The general presumptions in favor of the constitutionality of a statute, resolution or ordinance are stated in *Leiker v. Empl. Sec. Bd. of Review*, 8 Kan. App. 2d 379, 659 P.2d 236 (1983):

'Syl. ¶ 4 The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution.

'Syl. ¶ 5 In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it and, if there is any reasonable way to construe the statute as constitutionally valid, that should be done.

'Syl. ¶ 6 Statutes are not stricken down unless the infringement of superior law is clear beyond substantial doubt.

'Syl.¶ 7 The propriety, wisdom, necessity and expedience of legislation are exclusively matters for legislative determination and courts will not invalidate laws, otherwise constitutional, because the court does not consider the statute in the public interest of the state, since, necessarily what the views of the members of the court may be upon the subject is wholly immaterial and it is not the province nor the right of the court to determine the wisdom of legislation touching the public interest as that is a legislative function with which the court cannot interfere.'

"8. Due process requires notice, a hearing and a method of decision which does not offend the concept of fundamental fairness. *Haddock v. Bd. of Ed. U.S.D. No. 462, Cowley Co.*, 233 Kan. 66, 661 P.2d 368 (1983). The test as to whether a statute comports with the due process clause is whether the legislative means selected has a real and substantial relation to the objective sought, or whether the regulation is reasonable in relation to its subject and is adopted in the interest of the community. *Leiker v. Emp. Sec. Bd. of Rev.*, 8 Kan. App. 2d 379, 659 P.2d 236 (1983).

"9. A state may create a statutory classification of persons or businesses within the scope of its police power. Classification necessarily involves discrimination. Yet it is only invidious discrimination with no rational basis for the statutory classification that offends the equal protection guarantee. In social and economic legislation, a statutory classification does not violate the equal protection clause merely because its classifications are imperfect. Nor does the equal protection clause require a state to choose between attacking every aspect of a problem or not attacking the problem at all. *Leiker v. Emp. Sec. Bd. of Rev.*, 8 Kan. App. 2d 379, 659 P.2d 236 (1983). The rational basis test is applied in licensing cases of this sort. *State v. Huddleston*, 412 A.2d 1148 (Del. Super. Ct. 1980).

"10. An overbroad statute makes conduct punishable which under some circumstances is constitutionally protected from criminal sanctions. *State v. Huffman*, 228 Kan. 186, 189, 612 P.2d 630 (1980). A successful overbreadth challenge can thus be made only when (1) the protected activity is a significant part of the law's target and (2) there exists no satisfactory method of severing that law's constitutionality from its un-

constitutional applications. *State ex rel. Murray v. Palmgren,* 231 Kan. 524, 533, 646 P.2d 1091 (1982). See also *State v. Stauffer Comm., Inc.,* 225 Kan. 540, 547, 592 P.2d 891 (1979); *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125, 135 (1975).

"11. The test to determine whether a statute is unconstitutionally void for vagueness is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. At its heart the test is a common sense determination of fundamental fairness. *State ex rel. Murray v. Palmgren,* 231 Kan. 524, 532-33, 646 P.2d 1091 (1982).

"12. The Fourth Amendment, protecting 'the right of the people to be secure in their persons, houses, papers and effects, against unreasonable search and seizures,' does not apply to areas where virtually anyone coming to the door could gain admittance. *U.S. v. Harris,* 534 F.2d 207, 211 (10th Cir. 1975); *U.S. v. Oakes,* 564 F.2d 384, 386-87 (10th Cir. 1977). What is observable by the public is observable, without a warrant, by government inspection as well. *Marshall v. Barlow's Inc.,* 436 U.S. 307, 315, 98 S.Ct. 1816, 56 L.Ed.2d 305, 313 (1978).

"13. The United States Supreme Court has said that in the context of free speech the phrase 'prior restraint' is not a self-wielding sword, nor can it serve as a talismanic test; the duty of closer analysis and critical judgment in applying the thought behind the phrase requires a pragmatic assessment of the operation of the statute affecting speech in the particular circumstances. *Kingsley Books, Inc. v. Brown,* 354 U.S. 436, 441-42, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). A valid licensing and permit scheme on adult entertainment studios has not been held a prior restraint in like cases if the standards for issuance are not discretionary, but are based on definite standards. See *Bayside Enterprises, Inc. v. Carson,* 450 F.Supp. 696 (M.D. Fla. 1978); *State v. Huddleston,* 412 A.2d 1148 (Del. Super. Ct. 1980); *Airport Book Store, Inc. v. Jackson,* 242 Ga. 214, 248 S.E.2d 623 (1978).

"14. The court finds that this action is a proper one in which to issue a declaratory judgment.

"15. The court finds that the plaintiff has the standing to

bring this declaratory judgment action both under the general rule and the special rule when First Amendment violations are alleged.

"16. The court notes that the Board of County Commissioners has framed the resolution in question in terms of being a valid exercise of its police power 'to promote and secure the general welfare, health and [safety] of the citizens of Shawnee County' § 1(b) and that the 'continued unregulated operation of adult entertainment studios would be detrimental' to Shawnee County citizens § 1(a)(4). These and the other findings of the Board are entitled to great weight by this court.

"17. The resolution does not offend due process requirements as it provides for notice [§ 12(b)], a hearing [§ 12(b)], and a method of decision that is reasonable in relation to its subject [§ 5, § 8].

"18. The resolution does not offend equal protection requirements as it does not invidiously discriminate against the business in question.

"19. The resolution is neither overbroad nor vague as interpreted by this court as a matter of law.

"20. The resolution does not violate the Fourth Amendment's protection against unreasonable search and seizure as it is a public place not subject to the amendment and the government has a right to do administrative searches in such circumstances.

"21. The resolution contains no prior restraints in the exercise of First Amendment rights.

"22. The court holds that the resolution is valid and enforceable and does not violate the United States Constitution nor the Kansas Constitution.

"23. The temporary restraining order entered herein as to the enforcement of said ordinance is dissolved.

"24. This Memorandum Decision is the Order of the Court and no Journal Entry is required. Costs are taxed to the plaintiffs."

From this order, plaintiff appeals. His brief does not separately state and argue the various constitutional infirmities asserted. Instead, one issue is stated: The trial court erred in finding that the Resolution was constitutional under the First, Fourth and Fourteenth Amendments to the Constitution of the United States and correlative sections of the Bill of Rights of the Constitution

of Kansas. Under this single issue, all points are argued together. We believe the contentions on appeal are: First, the Resolution has the effect of prohibiting or regulating constitutionally protected speech or expression in violation of the First Amendment. Second, the Resolution permits unreasonable warrantless searches, violating the Fourth Amendment. And finally, the Resolution denies equal protection of the law in violation of the Fourteenth Amendment in that the Resolution's definition of the scope of the activities it purports to regulate is vague and ambiguous, and for the further reason that the Resolution exceeds the police power of the Board in that it is arbitrary, oppressive and capricious, and has no reasonable relationship to the harms sought to be prevented. Since the cited provisions of the Kansas Constitution go no further in this context than the cited Amendments to the Constitution of the United States, we will refer only to the latter throughout this opinion.

Before taking up the specific challenges to the Resolution, we first state the principles and guidelines—most if not all of which were stated by the trial court—which come into play upon the determination of challenges to the constitutionality of legislative enactments whether they be statutes, city ordinances or county resolutions. The constitutionality of a statute is presumed. All doubts must be resolved in favor of its validity, and before the act may be stricken down it must clearly appear that the statute violates the constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it. If there is any reasonable way to construe the statute as constitutionally valid, that should be done. A statute should not be stricken down unless the infringement of the superior law is clear beyond substantial doubt. The propriety, wisdom, necessity and expediency of legislation are exclusively matters for legislative determination. Courts will not invalidate laws, otherwise constitutional, because the members of the court do not consider the statute to be in the public interest; what the views of the members of the court may be upon the subject is wholly immaterial. It is not the province nor the right of courts to determine the wisdom of legislation touching the public interest, as that is a legislative function with which courts cannot interfere. See *State v. Rose*, 234 Kan. 1044, 1045, 677 P.2d 1011 (1984); *State v. Dunn*, 233 Kan. 411, 418, 662 P.2d 1286 (1983);

and *City of Baxter Springs v. Bryant*, 226 Kan. 383, 385-86, 598 P.2d 1051 (1979).

We turn now to the plaintiff's contention that the Resolution has the effect of prohibiting or regulating speech or expression.

This argument is based upon plaintiff's contention that the Resolution is designed to ban nude dancing, a means of expression protected by the First Amendment. Nude dancing is not mentioned in the Resolution. It prohibits, in licensed adult entertainment studios, public display of the genitalia "with the intent to arouse or gratify the sexual desires of the operator, entertainer, employer or customer." (For similar language, see K.S.A. 1984 Supp. 21-3508.) It requires entertainers whose breasts or buttocks are exposed to perform within the licensed premises only upon a raised stage and at least six feet distant from the nearest customer. It also prohibits, within the licensed establishment, persons from fondling, caressing or touching the breasts or genitals of others or from performing sexual intercourse or sodomy with a customer, or from manual or other contact stimulation of the genitalia of a customer. These provisions are consistent with and reasonably related to the Resolution's stated purposes.

The Resolution is not aimed at nude dancing. It is aimed at sex for hire in adult entertainment studios, where the Board found that prostitution has occurred and where the providing of various sexual services creates conditions that generate prostitution and other crimes. Expression, either by words or by dancing, is not the target of this legislation. Plaintiff does not allege that he provides dancing, nude or otherwise, in his establishment. We agree with the district court that the Resolution does not contain any significant restraint on the exercise of plaintiff's First Amendment rights.

We recognize that the Supreme Court has relaxed the traditional rules of standing to permit First Amendment attacks on statutes as overbroad. See *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 37 L.Ed.2d 830, 93 S.Ct. 2908 (1973). However, before an act may be facially challenged on overbreadth grounds, there must be a realistic danger that the act will significantly compromise First Amendment protections of third parties, persons not now before the court.

The Resolution is not one of broad general application. It does

not apply to places other than licensed adult entertainment studios. It does not restrict or apply to dance studios, music stores or studios, Kansas "private clubs," taverns where cereal malt beverages are sold, or restaurants. It affects only licensed adult entertainment studios, as defined in the Resolution. The only persons affected are those similarly situated to the plaintiff. This Resolution will not have any different impact on third parties' interests in First Amendment protected speech than it has on the interests of plaintiff. For this reason, we need not consider plaintiff's facial challenge of the Resolution on over-breadth grounds. See *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 80 L.Ed.2d 772, 782, 783, 784, 104 S.Ct. 2118 (1984), and cases there cited. There are no facts stated in plaintiff's petition or elsewhere in the record or briefs which disclose how this resolution will affect plaintiff's First Amendment rights. The petition merely states that plaintiff lawfully engages in business in Shawnee County, Kansas, outside the limits of any incorporated city. No details of the business are disclosed. His primary complaint is that, in order to comply with the Resolution, he will be required to close his business and make some changes in the premises at an unknown cost, and that he will be required to purchase a license. We find the claim that the Resolution impinges upon plaintiff's First Amendment rights to be without factual or legal support.

The next point urged is that the Resolution permits unreasonable warrantless searches and thus violates the Fourth Amendment. The Resolution provides that the entire interior portions of rooms, cubicles, booths or stalls wherein adult entertainment is provided must be visible from a common area of the premises, and that visibility into the area used for the purposes of adult entertainment must not be blocked from view by doors, drapes, or the like. It is this area, open to view by the public, which must also be open to the view of the sheriff for inspection. Thus, the sheriff must be allowed to view, and the operators must keep open for inspection, only those areas which are open to the view of the public, the patrons of the establishment. The trial court found that plaintiff's establishment was open to the public, and plaintiff does not challenge that finding.

The search of *private* areas of commercial property, those areas not open to the public, without either consent or a warrant,

have been held violative of the Fourth Amendment. *Camara v. Municipal Court*, 387 U.S. 523, 18 L.Ed.2d 930, 87 S.Ct. 1727 (1967); *See v. City of Seattle*, 387 U.S. 541, 18 L.Ed.2d 943, 87 S.Ct. 1737 (1967); *Colonnade Corp. v. United States*, 397 U.S. 72, 25 L.Ed.2d 60, 90 S.Ct. 774 (1970); and see *Marshall v. Barlow's Inc.*, 436 U.S. 307, 56 L.Ed.2d 305, 98 S.Ct. 1816 (1978). But as the court said in the latter case:

"What is observable by the public is observable, without a warrant, by the Government inspector as well." 436 U.S. at 315.

All that the Resolution here requires is that the sheriff inspect, and that the operator keep open for inspection, those areas of the establishment open to the public. As the trial court concluded, "The resolution does not violate the Fourth Amendment's protection against unreasonable search and seizure as it is a public place not subject to the amendment and the government has a right to do administrative searches in such circumstances." We agree.

Plaintiff next argues that the Resolution denies equal protection of the law in that its definitions of the scope of the activities it purports to regulate are vague and ambiguous. We do not have difficulty in understanding the Resolution when we read it in its entirety.

" 'Even the terms of a penal ordinance should be read *in pari materia* with the other provisions of the ordinance in order to determine the precise scope of the conduct prohibited. Clearly, the words of a statute or ordinance must be construed in light of their context and the purpose of the enactment.' " *Cardarella v. City of Overland Park*, 228 Kan. 698, 705, 620 P.2d 1122 (1980).

Viewed in this context, the descriptions of the activities the ordinance purports to regulate are not vague and ambiguous. On the contrary, they are quite specific.

As an additional equal protection argument, plaintiff contends that the Resolution exceeds the police power of the Board in that the Resolution is arbitrary, oppressive and capricious and has no reasonable relationship to the harms sought to be prevented. Federal, state and local governments have a legitimate interest in suppressing prostitution. Statutes and ordinances regulating the commercialization of sex have withstood challenges on a variety of constitutional grounds. See cases cited in 73 C.J.S., Prostitution and Related Offenses § 3, and 63A Am. Jur. 2d,

Prostitution § 4. Prohibiting prostitution is within the police power of the state. *City of Junction City v. White*, 2 Kan. App. 2d 403, Syl. ¶ 2, 580 P.2d 891 (1978).

The Resolution, as we have observed, requires that all areas where adult entertainment is provided be open to the public. It provides for government inspection. It requires the posting of signs, the obtaining of licenses and permits under strict standards, and it regulates the collection of fees from patrons. It prohibits persons within adult entertainment studios from performing various sexual acts. Clearly, the Resolution has a reasonable relationship to the harms which the Board has found extant in unregulated adult entertainment studios in Shawnee County and which harms the Board seeks to prevent.

The Resolution places adult entertainment studios in a separate classification for regulatory purposes. This is accomplished on the basis of the unique physical structure of the studios and the peculiar nature of the services provided. The Resolution is carefully and narrowly drawn so that it does not affect other enterprises, as we noted earlier. We conclude that it does not exceed the police power of the Board, that it is not arbitrary, oppressive or capricious, and that it has a rational relationship to the harms sought to be prevented.

The judgment is affirmed.

LOCKETT, J., dissenting: The majority concludes that Shawnee County's charter resolution providing for the licensing and regulation of adult entertainment studios is constitutional and that the resolution does not contain any significant restraint on the exercise of protected constitutional rights. I disagree.

First, let us examine significant parts of the resolution.

"SECTION 2. Definitions.

For the purpose of this Resolution, the words and phrases used herein shall have the following meanings, unless otherwise clearly indicated by the context:

(a) 'Adult entertainment studio' means any premises to which the public, patrons or members are invited or admitted and which are so physically arranged as to provide booths, cubicles, rooms, compartments or stalls separate from the common areas of the premises, wherein an entertainer provides entertainment to a member of the public, a patron or a member, when such entertainment is held, conducted, operated or maintained for a profit, direct or indirect. An adult entertainment studio includes, without being limited to, any premises that is physically arranged and used as

such, whether advertised or represented as an entertainment studio, rap studio, exotic dance studio, encounter studio, sensitivity studio, modeling studio or any other term of like import. Adult entertainment studio shall not include theaters, concert halls, or similar establishments where entertainment is performed for groups of four or more.

"SECTION 6. Permit Required.

No person shall be an entertainer in an adult entertainment studio without a valid permit issued by the Board.

"SECTION 7. Application for Permit.

(a) Any person desiring to secure a permit shall make application to the Board. The application shall be filed in triplicate with and dated by the County Clerk. A copy of the application shall be distributed promptly by the County Clerk to the Sheriff's Department and to the applicant.

(b) The application for a permit shall be upon a form provided by the County Clerk. An applicant for a permit shall furnish the following information under oath:

(1) Name and address, including all aliases.

(2) Written proof that the individual is at least eighteen (18) years of age.

(3) All residential addresses of the applicant for the past three (3) years.

(4) The applicant's height, weight, color of eyes and hair.

(5) The business, occupation or employment of the applicant for five (5) years immediately preceding the date of application.

(6) The adult entertainment studio or similar business permit history of the applicant; whether such person, in previously operating in this or any other city or state under permit, has had such permit revoked or suspended, the reason therefor, and the business activity or occupation subject to such action of suspension or revocation.

(7) All criminal, city ordinance, or county resolution violation convictions, forfeiture of bond and pleadings of nolo contendere on all charges, except minor traffic violations.

(8) Fingerprints and two (2) portrait photographs at least two (2) inches by two (2) inches of the applicant.

(9) The length of time the applicant has been a resident of Shawnee County immediately preceding the date of the application.

(10) A statement by the applicant that he or she is familiar with the provisions of this Resolution and is in compliance with them.

(11) Written statements of at least five (5) persons who are not related to the applicant that the applicant is of good moral character.

"SECTION 8. Standards for Issuance of Permit.

(a) To receive a permit as an entertainer, an applicant must meet the following standards:

(1) The applicant shall be at least 18 years of age.

(2) The applicant shall have been a resident of Shawnee County continuously for at least thirty (30) days immediately preceding the date of the application.

(3) The applicant shall not have been convicted of or pleaded no contest to a felony or any crime involving moral turpitude within five (5) years immediately preceding the date of the application.

(4) The applicant shall be a person of good moral character and reputation in the community in which he or she resides.

(5) The applicant shall not have been convicted of or pleaded nolo contendere to any violation of this Resolution as set forth in Section 16(a).

. . . .

"SECTION 13. Hours of Operation.

(a) No adult entertainment studio shall be open earlier than 8:00 o'clock a.m. nor later than 11:00 o'clock p.m.

. . . .

"SECTION 14. Responsibilities of the Operator.

. . . .

(g) Every adult entertainment studio shall be physically arranged in such a manner that the entire interior portion of the booths, cubicles, rooms or stalls wherein entertainment is provided is visible from a common area of the premises. Visibility shall not be blocked or obscured by doors, curtains, drapes, or any other obstruction whatsoever.

(h) The operator shall be responsible for and shall provide that any room or area used for the purpose of adult entertainment shall be readily accessible at all times and shall be opened to view in its entirety for inspection by the Sheriff or any deputy sheriff at all reasonable times.

(i) No operator, entertainer or employee of an adult entertainment studio shall demand or collect all or any portion of a fee for entertainment before its completion."

It is well settled that Shawnee County has the right to subject the individuals in the county to certain restraints in order to secure the general comfort, health, welfare and prosperity of the people. The police power of the governing body to protect the safety, health, peace, good order, and morals of the community includes the right to set reasonable restraints.

When restraints are imposed, reasonable certainty is essential. Vague law in any area suffers constitutional infirmity. Stricter standards of statutory vagueness are to be applied to laws inhibiting First Amendment rights. *Ashton v. Kentucky*, 384 U.S. 195, 16 L.Ed.2d 469, 86 S.Ct. 1407 (1966).

The county resolution suffers from both overbreadth and vagueness. It violates the overbreadth doctrine because the resolution is neither clear nor precise. The resolution regulates everything from the floor plan of the building to the size of the audience. The resolution also violates the vagueness doctrine of the due process clauses of the Fifth and Fourteenth Amend-

ments. Reasonable certainty in laws is essential when they impose sanctions to insure compliance.

The Fourteenth Amendment requires that the states refrain from denying to any person within their jurisdiction equal protection of the laws. No person is to be deprived of life, liberty, or property without due process of law. Under the Constitution, equal protection and security are the right of all under like circumstances to the enjoyment of their personal or civil rights.

Section 8(a)(2) of the resolution requires that all applicants for a permit to entertain "shall have been a resident of Shawnee County continuously for at least thirty (30) days immediately preceding the date of the application." Equal protection requires like treatment of all citizens of the state except under narrow circumstances. Section 8(a)(2) limiting the issuance of permits only to residents of Shawnee County is a clear violation of the equal protection clause of the United States Constitution.

I have no argument with the purpose of the resolution. I only argue against the manner selected by the Board of County Commissioners.

HOLMES, J., joins the foregoing dissent.