### No. 43,333

ERNEST E. SAVAGE and DORIS BLOOMFIELD GOLDSMITH, *Appellants*, v. MAYME B. SAVAGE, JACK SAVAGE and GRACE M. HELT, *Appellees*.

(387 P. 2d 190)

Opinion filed December 7, 1963.

W. R. Mathews, of Winfield, argued the cause and *Lawrence E. Christenson* and *Marion P. Mathews*, both of Winfield, were with him on the briefs for the the the appellants.

*J. A. Herlocker*, of Winfield, argued the cause and *Harry O. Janicke* and *Robert L. Bishop*, both of Winfield, were with him on the briefs for the appellees.

The opinion of the court was delivered by

JACKSON, J.: This case involves the construction of the will of George W. Savage who died testate October 17, 1936 and whose will was probated on January 9, 1937.

George W. Savage left as his heirs: Mary Jane Savage, his widow; Roy W. Savage and Ernest E. Savage, adult sons; Grace M. Helt, adult daughter; and Doris Bloomfield Goldsmith, granddaughter, daughter of a deceased daughter.

The appellants as plaintiffs are Ernest E. Savage, son of the testator, and Doris Bloomfield Goldsmith, the granddaughter.

The will provided that the wife of the testator, Mary Jane, should have the use, rents and profits of all his real estate for her life and upon her death the entire income was to be divided equally among the testator's two sons, Ernest and Roy and his daughter Grace. Upon the death of his son Ernest, the remainder was bequeathed to his son Roy and his daughter Grace, share and share alike, upon their paying to his granddaughter Doris the sum of $1500.

The executor closed the estate on March 4, 1938, and withdrew from office. At that time no controversy existed as to the construction of the will.

Following the death of the widow, Mary Jane, on October 29, 1951, testator's son Roy, named as trustee in the will, took over the duties of handling the property. He carried out the provisions of his father's will as to distributing the income from the properties to his brother, appellant Ernest, to his sister and to himself.

When, contrary to the calculations of the testator, the son Roy pre-deceased son Ernest, the relationship of the Savage family was changed completely with respect to paragraphs 4 and 5 of the will which read as follows:

"4. After the death of my wife, it is my will that the income from all of said real estate, after the payment of taxes and necessary upkeep and expenses of the property from the date of the death of my said wife up until the date of the death of my son, Ernest E. Savage, be divided share and share alike between my sons, Ernest E. Savage and Roy W. Savage, and my daughter, Grace M. Helt. And I hereby appoint my son, Roy W. Savage, as Trustee with authority to collect the rents and profits from said real estate during said time and pay the taxes and other necessary expenses incident to the handling of said property and divide the proceeds among said parties as aforesaid.

"5. After the death of my said son, Ernest E. Savage, it is my will and I hereby give, devise and bequeath all the remainder of my said property to my son, Roy W. Savage, and my daughter, Grace M. Helt, share and share alike, upon their paying to my granddaughter, Doris Bloomfield, the sum of Fifteen Hundred Dollars, ($1,500.00), and I hereby give and bequeath to my said granddaughter the said sum to be paid by my son, Roy W. Savage, and my daughter, Grace M. Helt, within a year after the death of my said son Ernest E. Savage, and upon making said payment the full title to my said real estate shall vest in my said son, Roy W. Savage, and my daughter, Grace M. Helt."

It was not until twenty-four years after the will had been admitted to probate that the first action was filed in any court for the construction of the father's will.

Upon the death of Roy in December, 1960, his heirs filed their

action to determine the descent of Roy's properties which, they claim, included a one-half interest in the holdings listed in the will of George W. Savage.

Plaintiffs then filed their action for construction of the will of George W. Savage. As alleged in the petition, it was uncertain who would take the property, what title, if any, was vested in Roy and Grace and it became necessary that the will be construed to determine these and other questions. They claim that "the 4th and 5th paragraphs of said will are uncertain and conflicting, vague and ambiguous and contrary to public policy, and should be declared illegal and void; . . ."

The appellants filed the petition seeking a declaratory judgment under G. S. 1949, 60-3127. The defendants filed a motion to test the petition claiming that it should be stricken or made more definite and certain. The motion was denied.

Defendants then filed a demurrer to hold that the petition did not state a cause of action. The district court sustained the demurrer and plaintiffs bring the matter here seeking a reversal.

We feel that the allegations of the petition are sufficient to show that a controversy did exist arising over the interpretation of the will and call attention to the case of *Huber v. Schmidt*, 188 Kan. 36, 360 P. 2d 854, where on page 39, the opinion states the rule:

"While a demurrer is rarely used in attacking a petition for a declaratory judgment, when a party elects to so employ a demurrer the test applied in determining the sufficiency of the pleading under attack is whether such pleading sets forth facts showing an actual controversy concerning some matter covered by the statute, G. S. 1949, 60-3127. If an actual controversy is alleged in a petition for a declaratory judgment, it is the duty of the district court to overrule the demurrer to the petition and proceed with the cause in accordance with the provisions of the act. (*State Association of Chiropractors v. Anderson*, 186 Kan. 130, 348 P. 2d 1042; *McAdam v. Western Casualty & Surety Co.*, 186 Kan. 505, 351 P. 2d 202; *Bodle v. Balch*, 185 Kan. 711, 347 P. 2d 378; *Simmons v. Reynolds*, 179 Kan. 785, 298 P. 2d 345; *Stalnaker v. McCorgary*, 170 Kan. 9, 223 P. 2d 738; *Hyde Park Dairies v. City of Newton*, 167 Kan. 730, 208 P. 2d 221.)"

The cases cited in *Huber v. Schmidt*, supra, are fully in point.

It is therefore held that the trial court must be reversed as to its order on the demurrer. It is so ordered.

ROBB, J., dissents.