## OZARK POULTRY PRODUCTS, INC. *v.*
## Roy GARMAN ET AL

5-5647                                    472 S.W. 2d 714

Opinion delivered November 15, 1971

*Putman, Davis & Bassett,* for appellant.

*Eugene Coffelt* and *Lloyd C. Burrow, Jr.,* for appellees.

GEORGE ROSE SMITH, Justice. The appellant owns a rendering plant between Siloam Springs and Gentry. The appellees—nine homeowners in the vicinity—brought this suit to abate the plant, as a nuisance polluting both the air and a natural stream. The chancellor found the plant to be a public nuisance and ordered it closed unless conditions at the plant were corrected within a reasonable time fixed by the court. For reversal the appellant argues a single point: The appellees were not entitled to a decree abating a public nuisance, because they failed to show that they have suffered special damage different from that suffered by the public in general.

The facts are not in dispute and need not be narrated in detail. The appellant manufactures an ingredient used in fertilizer and poultry feed, by cooking such organic matter as dead farm animals and the offal discarded by poultry processing plants in northwest Arkansas and southern Missouri. The odors from the plant are so offensive that the plaintiffs and other persons in the vicinity are often unable to sleep at night or to eat their meals without nausea.

The appellant's manager admitted on the witness stand that the plant's operation is in violation of law. That the plaintiffs have been seriously damaged in the enjoyment of their homes is not open to question. Nevertheless, the appellant, citing *Stoutemeyer* v. *Sharp,* 89 Ark. 175, 116 S. W. 189, 21 L. R. A. (n. s.) 74 (1909), and *Martin* v. *Hornor,* 83 Ark. 330, 103 S. W. 1134 (1907), insists that since its foul-smelling rendering plant inflicts the same damage upon all homeowners within an area of several square miles, the facility is a public nuisance that can be abated only upon complaint by the attorney general, the prosecuting attorney, or other representative of the public.

The law offers no such immunity to a confessed and flagrant wrongdoer in the circumstances of this case. Even though the chancellor referred to the rendering plant as a public nuisance, which it may be, it is also a private nuisance with respect to the plaintiffs. The difference is that a public nuisance involves a violation of

a public right held in common by the community as a whole, while a private nuisance is a violation of the rights of the individual, such as the right to enjoy his home. In both the *Stoutemeyer* case and the *Martin* case, *supra*, relied upon by the appellant, the court was dealing with an obstruction to a public street, clearly constituting a public nuisance.

An excellent statement of the distinction between the two classes of nuisances was made in *Fisher* v. *Zumwalt*, 128 Cal. 493, 61 Pac. 82 (1900), where the court said:

> There is no doubt but that there are many nuisances which may occasion an injury to an individual for which an action will not lie by him in his private capacity, unless he can show special damage to his person or property, differing in kind and degree from that which is sustained by other persons who are subjected to similar injury. Among such may be mentioned the invasion of a common and public right which every one may enjoy, such as the use of a highway or canal or public landing place. But this class of nuisances is confined in most cases to where there has been an invasion of a right which is common to every person in the community, and not to where the wrong has been done to private property, or the private rights of individuals, although many individuals may have been injured in the same manner and by the same means. In the one case the invasion is of a public right which injures many individuals in the same manner, although it may be in different degrees. In the other case no public or common right is invaded, but by the one nuisance the private rights and property of many persons are injured. Because the nuisance affects a great number of persons in the same way, it cannot conclusively be said that it is a public nuisance, and nothing more. The fact that a nuisance is public does not deprive the individual of his action in cases where, as to him, it is private, and obstructs the free use and enjoyment of his private property.

The same point of view is expressed in the Restatement of Torts (2d), § 201 (1965):

> [A private nuisance] may be some thing which un-
> reasonably interferes with the actor's use or enjoy-
> ment of his land, as where the health or safety of
> himself or a member of his household is threatened,
> or his use or enjoyment of the land is unduly re-
> stricted, whether by a deprivation or curtailment
> of one of the natural rights to air, water, and sup-
> port, or otherwise. Thus it may consist of an ill-
> drained privy, a garbage pile emitting offensive
> odors. . .

That point of view was also taken in the original Restatement of Torts (1939), in the Introductory Note to Chapter 40:

> A public nuisance is an offense against the State,
> and as such is subject to abatement or indictment
> on the motion of the proper governmental agency.
> A private nuisance is a tort to a private person, and
> actionable by him as such. A public nuisance may
> arise from an interference with the use by the public
> of a public place, such as a highway, navigable
> river, or park, the privilege to use which is given
> by the State or a municipal subdivision. . . .

> Conduct that amounts to a public nuisance may at
> the same time be a private nuisance, and actionable
> as such. If a person's interest in the private use and
> enjoyment of his land is invaded by another's con-
> duct so that the conduct would ordinarily be action-
> able by the person harmed, it is none the less action-
> able because the conduct is also a public nuisance.

We conclude that the appellant's plant constituted a private nuisance with respect to these appellees and was properly abated by the chancellor.

Affirmed.