272 N.W.2d 448 (1978)
POTTAWATTAMIE COUNTY and Pottawattamie County Board of Supervisors, Mills County and Mills County Board of Supervisors, Appellees,
v.
IOWA DEPARTMENT OF ENVIRONMENTAL QUALITY, AIR QUALITY COMMISSION, Appellant.
No. 61549.
Supreme Court of Iowa.
December 20, 1978.
*450 Richard C. Turner, Atty. Gen., and Timothy D. Benton, Asst. Atty. Gen., for appellant.
H. Walter Green, Mills County Atty., and Kenneth E. Tyler, Asst. Pottawattamie County Atty., for appellees.
Considered by REYNOLDSON, C. J., and LeGRAND, McCORMICK, AlLBEE and McGIVERIN, JJ.
McGIVERIN, Justice.
Respondents Iowa Department of Environmental Quality (DEQ) and Air Quality Commission (AQC), also collectively referred to as the department, appeal the dismissal by trial court in a judicial review proceeding of a DEQ complaint against petitioners Pottawattamie and Mills Counties and their boards of supervisors (Counties). We reverse the trial court.
Respondents claim petitioners are in violation of the "fugitive dust rule", rule 400-4.3(2)(c) of the Iowa Administrative Code (IAC), relative to a dust condition existing on a one and one-fourth mile gravel, secondary road on the boundary between Pottawattamie and Mills Counties. Six residences are on the road. After receiving no satisfaction from the counties, two residents complained to the DEQ in 1975 about the dust condition created when private trucks traveled the road to a nearby rock quarry and returned bearing heavy loads of gravel. Inspection by the DEQ resulted in issuance of a notice of violation under sec. 455B.17, The Code, 1975. Next, DEQ filed a petition alleging a fugitive dust condition existed on the road.
An evidentiary hearing pursuant to sec. 4558.17 was held before a DEQ hearing officer, who filed proposed findings and a proposed decision which found petitioners violated rule 400-4.3(2)(c) by allowing materials to be transported without taking reasonable precautions to prevent particulate matter in quantities sufficient to create a nuisance, as defined in sec. 657.1, Code, from becoming airborne.
The AQC sustained the decision and order of the hearing officer.
*451 The counties filed petitions for judicial review pursuant to sections 17A.19 and 455B.39, The Code. The cases were consolidated for hearing and decision by the court, upon the prior record without additional evidence.
Chapter 455B, Code, creates the Iowa Department of Environmental Quality and the Air Quality Commission and states their duties.
Section 455B.12(2) requires that the department shall:
2. Establish, modify, or repeal rules pertaining to the evaluation, abatement, control, and prevention of air pollution after at least sixty days' public notice and public hearings.
Pursuant to statutory authority, DEQ promulgated rule 400-4.3(2)(c) which states in relevant part:
c. Fugitive dust. No person shall allow, cause or permit any materials to be handled, transported or stored; or a building, its appurtenances or a construction haul road to be used, constructed, altered, repaired, or demolished, with the exception of farming operations or dust generated by ordinary travel on unpaved public roads, without taking reasonable precautions to prevent particulate matter in quantities sufficient to create a nuisance, as defined in section 675.1 of the Code, from becoming airborne. All persons, with the above exceptions, shall take reasonable precautions to prevent the discharge of visible emissions of fugitive dusts beyond the lot line of the property on which the emissions originate. The public highway authority shall be responsible for taking corrective action in those cases where said authority has received complaints of or has actual knowledge of dust conditions which require abatement pursuant to this subrule. Reasonable precautions may include, but not be limited to, the following procedures.
. . . . . (2) Application of suitable materials, such as but not limited to asphalt, oil, water or chemicals on unpaved roads, material stockpiles, race tracks and other surfaces which can give rise to airborne dusts.
. . . . .
"Fugitive dust" is defined by rule 400-1.-2(26) as any airborne solid particulate matter emitted from any source other than a flue or stack.
The counties are "persons" within the meaning of rule 400-4.3(2)(c) under sections 455B.10(7) and (8), The Code.
"Particulate matter" is defined, as here relevant, by rule 400-1.2(41), as any material that exists in a finely divided form as a solid at standard conditions.
"Emission" under sec. 455B.10(5) means a release of one or more air contaminants into the outside atmosphere.
The counties are the "public highway authority" for this road within the meaning of the fugitive dust rule.
Section 657.1, The Code, states in part:
Whatever is injurious to health, indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance. . . .
The following questions are presented for our review:
a) Whether the department's rule relating to fugitive dust is unconstitutionally vague and violates due process in failing to set out ascertainable standards for determining and controlling fugitive dust.
b) Whether the rule may only be enforced in situations which constitute a public nuisance.
c) Whether trial court erred in holding the road was not subject to regulation under rule 400-4.3(2)(c), IAC.
Appeal to us was taken under section 17A.20, of the Iowa Administrative Procedure Act (IAPA), Code Chapter 17A, which applies here. City of Davenport v. Pub. Emp. Rel. Bd., 264 N.W.2d 307, 311 (Iowa 1978).
*452 I. The record shows the following facts. Trucks, autos, and farm machinery use the road. As a result of energy imparted to the loose gravel road surface by wheels of the moving vehicles, limestone dust is released to the atmosphere. The amount of dust raised is related to the weight and speed of the vehicle. Heavily loaded trucks cause more dust to be raised or released than autos. Rock and gravel are materials for the purposes of rule 400-4.3(2)(c).
Limestone dust is particulate matter as defined by rule 400-1.2(41) in that it is finely divided (crushed by the energy from the wheels of vehicles) material (limestone rock) that exists as a solid at standard conditions. The dust which is released into the atmosphere and becomes airborne by action of the truck wheels is visible and moves beyond the lot line (the county line road and its right of way).
Witnesses testified that the dust raised from the gravel road by ordinary travel from autos, farm machinery, and pickup trucks was expected and tolerable. However, when large trucks in season made repeated round trips, an average of at least 50 per day, to and from the nearby rock quarry, returning with heavy loads of rock, the dust raised from the road by the trucks was "just like a fog" making it difficult to breathe. The heavy dust prevented residents from being outdoors while the trucks passed the homes. It permeated even into closets in the houses and coated the gardens and lawns.
In 1973 the counties treated the road to control dust. When they failed to do so in 1975, the complaint by two residents to the DEQ resulted.
One resident, Mrs. Kruse, had taken previous steps to attempt to remedy the dust problem. Complaints had been lodged with boards of supervisors of the counties. Several years previously she filed suit in district court. A small settlement from the quarry was used, at least in part, to oil the road in front of her home.
II. The counties contend the DEQ rules relating to fugitive dust are unconstitutionally vague and violate due process in failing to set out ascertainable standards for determining and controlling fugitive dust.
Specifically, the counties claim the terms in rule 400-4.3(2)(c) of "ordinary travel", "materials" and "nuisance as defined in sec. 657.1" are unconstitutionally vague.
We recently articulated the legal test for vagueness in Knight v. Iowa Dist. Court of Story County, 269 N.W.2d 430, 432 (Iowa 1978), as follows:
If the statute's meaning is fairly ascertainable by reliance on generally accepted and common meaning of words used, or by reference to the dictionary, related or similar statutes, the common law or previous judicial construction, due process is satisfied.
Where, as in Knight, the statute examined is penal in nature, we said there must be satisfaction of two criteria: "(1) It must give a person of ordinary intelligence fair warning of what is prohibited, and (2) it must provide explicit standards for those who enforce it." Id. at 432; Grayned v. City of Rockford, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 2298-2299, 33 L.Ed.2d 222, 227-228 (1972); State v. Jaeger, 249 N.W.2d 688, 691 (Iowa 1977). We assume, without deciding, that the rule challenged is penal.
A statute is unconstitutionally vague under due process when its language does not convey sufficiently definite warning as to that conduct proscribed by the statute, measured by common understanding or practice. If the terms of the statute are such that an ordinary person exercising common sense can sufficiently understand and fulfill its proscriptions, it is not unconstitutionally vague. A statute or a rule has the requisite specificity if its meaning is fairly ascertainable by reference to similar statutes, other judicial determination and reference to the dictionary, or if the words themselves have a common and generally accepted meaning. Unless the rule clearly, palpably and without doubt infringes the constitution it should be upheld. Millsap v. Cedar Rapids Civil Service Commission, 249 N.W.2d 679, 684 (Iowa 1977).
*453 The counties claim the terms "ordinary travel" and "materials" in the fugitive dust rule are impermissibly vague. The court found, and we agree, that ordinary travel is susceptible to a construction such that a person of ordinary intelligence could ascertain its meaning. See State v. Donner, 243 N.W.2d 850, 853 (Iowa 1976). The AQC found as a fact the travel on this secondary road was extraordinary. Trial court did not disagree, nor do we.
Although petitioners alleged "materials" is unconstitutionally vague, a degree of indefiniteness is necessary to avoid unduly restricting the applicability of the rule. All "materials" which give rise to emission of the particulate matter proscribed are, logically, properly within the purview of the rule. To enumerate the specific "materials" which might violate the fugitive dust rule would omit offending substances. It is the dust, not the material which is proscribed.
Finally, the counties contend the use of sec. 657.1, The Code, as the standard of nuisance for violating the fugitive dust rule is unconstitutionally vague.
Section 657.1 presents an articulated standard for determination of violation of the fugitive dust rule, preventing application of the rule in an arbitrary fashion. The standard has been applied to dust conditions, in fact, in a nuisance action pre-dating chapter 455B. Shannon v. Missouri Valley Limestone Company, 255 Iowa 528, 122 N.W.2d 278 (1963). The statute has been applied numerous times, providing case law construction of its meaning. Case law, therefore, has further refined the standards of nuisance. See generally, Incorporated Town of Carter Lake v. Anderson Excavating and Wrecking Co., 241 N.W.2d 896 (Iowa 1976); Local Board of Health, Boone County v. Wood, 243 N.W.2d 862 (Iowa 1976).
We hold that the constitutional attack on rule 400-4.3(2)(c) by the counties is without merit.
III. We next must consider whether the fugitive dust rule may only be enforced in situations which constitute a public nuisance.
The counties contend the rule can only be applied to public nuisance situations. However, Chapter 455B does not mention either public or private nuisances.
Our cases indicate sec. 657.1 can be used as the basis of both public and private nuisance actions. State ex rel. Turner v. Younker Brothers, Inc., 210 N.W.2d 550 (Iowa 1973) (public nuisance suit against excessive interest rates); cf. Patz v. Farmegg Products, Inc., 196 N.W.2d 557 (Iowa 1972) (private nuisance suit against chicken farm).
The same circumstances may create both a public and private nuisance. The facts may create a nuisance to the general population and also a nuisance to individual plaintiffs. Park v. Chicago & S. W. R. Co., 43 Iowa 636, 638 (1876); Ozark Poultry Products, Inc. v. Garman, 251 Ark. 389, 472 S.W.2d 714, 715-716 (1971). The elements of public nuisance are: (1) unlawful or antisocial conduct that (2) in some way injures (3) a substantial number of people. State ex rel. Turner v. Younker Brothers, Inc., 210 N.W.2d at 564. The determination of private nuisance rests upon whether there has been "an actionable interference with a person's interest in the private use and enjoyment of his land." Patz v. Farmegg Products, Inc., 196 N.W.2d at 560.
The aim of Chapter 455B is control of air pollution generally. We believe that to draw a distinction between public and private nuisance would artificially limit the policy. Sec. 455B.10(3), The Code, defines air pollution as:
[P]resence in the outdoor atmosphere of one or more air contaminants in sufficient quantities and of such characteristics and duration as is or may reasonably tend to be injurious to human, plant, or animal life, or to property, or which unreasonably interferes with the enjoyment of life and property.
Sections 455B.10(1) and (2) define air contaminant and air contaminant source. In sections 455B.12(2) and (3) the Air Quality *454 Commission is empowered to establish rules and standards to prevent, abate, and minimize air pollution. The fugitive dust rule is an emission standard promulgated pursuant to the authorization of sec. 455B.12(4) which relates to emission standards for air contaminants. The legislature delegated the power to promulgate these rules and standards as the mechanism through which statewide air quality is to be maintained and air pollution minimized.
We hold that a public nuisance need not be proved to effect a violation of the fugitive dust rule. If DEQ had to prove the violation injured a substantial number of people, the rule would be limited in enforcement and the legislative purpose would be frustrated.
IV. Finally, we must consider whether trial court erred in holding this secondary road was not subject to regulation under rule 400-4.3(2)(c).
The court stated that absent a showing the subject road was a construction haul road, there was nothing in the rule placing any secondary road under the scope of DEQ rule. The court's construction focuses on the first sentence of the rule which prohibits any person to "cause or permit any materials to be handled, transported or stored; or a building, its appurtenances or a construction haul road to be used . . . without taking reasonable precautions to prevent particulate matter . . . from becoming airborne." The DEQ conceded and the court agreed that the road in issue is not a construction haul road. The counties do not challenge the AQC finding that extraordinary travel occurred on the road; therefore, the exception to the rule for "ordinary travel on unpaved public roads" is inapplicable.
The rule, of course, prohibits not only use of a construction haul road but also handling, transportation or storage of materials where either process results in particulate pollution. The court construed the prohibition on handling, transportation and storage of materials to be concerned solely with particulate pollution generated from the materials being handled, transported or stored. Since particulate matter in this instance originated not from the materials, or gravel, being transported but from the road over which the transportation occurred, the court concluded the DEQ was without authority to regulate in this factual situation.
We believe the district court construction unnecessarily limits the rule.
In construing and interpreting administrative rules, we apply the principles governing construction and interpretation of statutes. Motor Club of Iowa v. Dept. of Transp., 251 N.W.2d 510, 518 (Iowa 1977). We are guided by the following principles in City of Des Moines v. Elliott, 267 N.W.2d 44, 45 (Iowa 1978):
Words in a statute are given their ordinary meaning unless defined differently by the legislature or possessed of a peculiar and appropriate meaning in law. . . We must construe the statute in its entirety, and not from any one portion.
Applying these principles, we find the alleged violation of the fugitive dust rule to be properly within DEQ regulatory authority.
Although the court concluded particulate matter must originate from the materials handled, transported or stored, we find no such restriction in the rule. The language literally prohibits any person to "cause or permit any materials to be handled, transported or stored . . . without taking reasonable precaution to prevent particulate matter . . . from becoming airborne." In this instance the material, gravel, was transported without reasonable precaution taken to prevent particulate matter, limestone dust, from becoming airborne.
This interpretation furthers the purpose of the rule, control of fugitive dust, without the unnecessarily limiting inquiry whether the dust arises from the materials transported or the road over which transportation occurs.
Trial court erred in reversing the AQC decision and dismissing the complaint of the DEQ.
*455 The decree of the trial court is reversed. The decision of the AQC is affirmed and reinstated.
REVERSED.