No. 49,999

ACUPUNCTURE SOCIETY OF KANSAS, *et al., Appellants,* v. KANSAS STATE BOARD OF HEALING ARTS, *et al., Appellees.*

(602 P.2d 1311)

Opinion filed December 1, 1979.

*Ralph E. Skoog,* of Topeka, argued the cause, and *Thomas J. Lyons,* of Petersen, Lyons, Tews & Squires, of St. Paul, Minnesota, was with him on the brief for the appellants.

*Janet Chubb,* assistant attorney general, argued the cause, and *Curt T. Schneider,* attorney general, *Philip A. Harley,* assistant attorney general, and *Mark G. Ayesh,* legal assistant, were with her on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an appeal from a ruling in a declaratory judgment action prohibiting chiropractors from using acupuncture in treating their patients because it constituted surgery, which is a prohibited practice for chiropractors.

The factual situation leading to the filing of the action may be informative. Such facts as stated in the trial court's memorandum may be stated in substance.

The case was filed June 16, 1975. The nature and the problems presented underwent considerable change since its onset. Initially the case was filed in Sedgwick County. Subsequently the venue was transferred to Shawnee County. At that time the controversy stemmed from the fact that the 1974 Kansas Legislature had authorized the State Board of Healing Arts to make a

study of the subject and practice of acupuncture. The state board was empowered to authorize qualified persons to practice acupuncture for experimental purposes and exempted such persons from criminal or civil prosecution on licensing grounds. In accordance with such grant of authority, the state board did set up educational requirements for and authorization for the experimental practice of acupuncture. Upon meeting the requirements, certain medical doctors and chiropractors became eligible. Reports on such acupuncture practice were required to be sent to the state board. All proceeded uneventfully until the state board set December 1, 1975, as the end of the experimental study and practice. This date was set in order to afford time for the analysis of the study and preparation of a report by the state board to the 1976 legislature. The plaintiffs at the time of filing and now (although the names change from time to time) were and are licensed Kansas chiropractors. The plaintiffs, in late 1975, were primarily concerned with the interruption of their acupuncture practice between December 1, 1975, and the time the 1976 legislature took action on the report. In other words, it was anticipated that the 1976 legislature would take some action on acupuncture. If the plaintiffs were satisfied with that action, the case would be resolved. If the plaintiffs were not satisfied with the legislative action, then a challenge would be made, but it would be over the new enactment. By agreement the status quo was preserved between December 1, 1975, and the legislative session. During the 1976 legislative session, the report was received and hearings were held. However, no laws were enacted. Due to counsel changes and other causes, little occurred in the case in 1976. Ultimately, the case underwent a metamorphosis into a full-blown declaratory judgment action seeking a declaration that no special legislation was needed to permit chiropractors to practice acupuncture as it was not surgery and was already a permissible form of chiropractic procedure. In its new form the case went to trial.

After an extensive trial, the judge issued a memorandum dated August 18, 1977, which contained findings of fact and conclusions of law. Only two of the findings were objected to by the plaintiffs. In the interest of brevity, we will summarize the findings other than the two against which objections were lodged:

Acupuncture is a modality of treatment which is a healing art

and falls within the purview of the Board of Healing Arts (by agreement of parties). It is a name ascribed to a variety of treatment procedures which are basically Chinese in origin. Some forms of acupuncture do not involve the insertion of a nonhollow wire through the skin but for the purpose of this case, acupuncture is considered to involve the use of such nonhollow wires or needles as this is the dominant form and the form plaintiffs are seeking to be permitted to utilize in their practice.

The insertion of the wires or needles through the skin is considered by defendant attorney general to be the practice of surgery. It is a form of ancient Chinese folk medicine. Prior to the Communist takeover of China, acupuncture was practiced by so-called "barefoot doctors" and was totally separate from and not a part of the training and practice of graduates of Chinese medical schools.

In the twenty plus years between the taking of power by the Chinese Communists and the thawing of relations between the United States and China during the Nixon administration, acupuncture gained "respectability" in the Chinese medical community and a degree of amalgamation occurred. When Western eyes were permitted into China during the Nixon years, acupuncture received world wide attention for the first time. The great interest of the Western World in acupuncture is basically a phenomenon of the 1970's.

Acupuncture is a useful modality of treatment for a variety of health disorders and in anesthesia. The reason why acupuncture works and its underlying theory have never been explained to the satisfaction of the scientific community.

The origin of acupuncture lies in antiquity and until the last few years it was solely a folk art of the Far East—handed down from father to son, so to speak, as opposed to being acquired from traditional formal educational institutions. The theory of chiropractic developed along separate lines and is of very recent vintage by comparison. Acupuncture methods and theories were taught in chiropractic colleges for the first time in the 1970's. Such courses are not taught in all chiropractic colleges and are taken on an elective rather than on a required basis.

Some risk of infection and injury is incurred by a patient receiving acupuncture and the same should be administered only by trained persons (by agreement of the parties and testimony).

Requirements as to training must exist before a person can practice acupuncture for the safety and protection of the public (by agreement of the parties and testimony). Acupuncture has caught the public fancy and great interest in it exists. It is a rapidly expanding field.

Chiropractors in Kansas are expressly permitted to draw blood for diagnostic purposes. "Surgery" is a broad term employed to cover the work surgeons do. "Surgery" covers procedures in which no incision or entering of the skin is involved; for example, a closed reduction of a fracture. The traditional chiropractic theory involves external manipulation, applying heat to the exterior, etc. The only piercing of the skin permitted is the drawing of blood for diagnostic purposes.

The factual statements just recited are not disputed by the parties. The plaintiffs object only to findings of fact 18 and 22 which are as follows:

"18. Acupuncture is a separate and distinct modality of treatment and is not a part of any other modality of treatment."

"22. Acupuncture, being neither 'fish nor fowl' is a separate modality of treatment and is not a natural part of any other modality of treatment."

Following the above listed findings of fact the court made conclusions of law which we quote:

"1. Acupuncture is a separate modality of treatment within the purview of the Board of Healing Arts;

"2. Acupuncture is not inherently a part of chiropractic theory;

"3. The traditional definitions of surgery arose before the interest in acupuncture occurred;

"4. Acupuncture involves the piercing of skin for treatment, not diagnostic purposes, and comes within the term 'surgery' as it is now defined and commonly understood;

"5. If chiropractors are to be permitted to practice acupuncture in Kansas, this authorization must come from legislation rather than by judicial decree;

"6. The legislature is equipped to hold public hearings and determine if chiropractors should be expressly permitted to practice acupuncture and, if so, to direct the Board of Healing Arts to prepare appropriate regulations concerning same;

"7. K.S.A. 65-2871 (1976 Supp.) does not permit chiropractors to practice acupuncture."

Subsequently the above conclusions of law and findings were made the order of the court, the court's memorandum of decision was filed August 19, 1977, and the journal entry was filed March 27, 1978.

The legislature in 1976 enacted a very complete and comprehensive revised Healing Arts Act. K.S.A. 1978 Supp. 65-2871 reads:

"For the purpose of this act the following persons shall be deemed to be engaged in the practice of chiropractic: (a) Persons who examine, analyze and diagnose the human living body, and its diseases by the use of any physical, thermal or manual method and use the X-ray diagnoses and analysis taught in any accredited chiropractic school or college and (b) persons who adjust any misplaced tissue of any·kind or nature, manipulate or treat the human body by manual, mechanical, electrical or natural methods or by the use of physical means, physiotherapy (including light, heat, water or exercise), or by the use of foods, food concentrates, or food extract, or who apply first aid and hygiene, but chiropractors are expressly prohibited from prescribing or administering to any person medicine or drugs in materia medica, or from performing any surgery, as hereinabove stated, or from practicing obstetrics."

The specific question before us is whether the legislators intended to grant to chiropractors the right to use acupuncture in their treatment or was it specifically forbidden?

In considering the intent of the legislature the words of a statute must be taken in the sense in which they are generally understood. However, the language used in designating persons deemed engaged in the practice of chiropractic, which reads: "[P]ersons who adjust any misplaced tissue of any kind or nature, manipulate or treat the human body by manual, mechanical, electrical or natural methods or by the use of physical means" should not be utilized to set aside the settled meaning of the practice of chiropractic and obliterate the distinction between the practice of chiropractic and the practice of medicine and surgery.

With these limitations we will attempt to determine the intention of the legislature in passing the Healing Arts Act in 1976. In doing so we consider the trial court's findings. Such findings may be summarized in part as follows:

Acupuncture is considered, for the purpose of this case, to involve the use of nonhollow wires or needles which is the dominant form, and the form plaintiffs are seeking permission to utilize. It is a form of ancient Chinese folk medicine. Prior to the Communist takeover acupuncture was separate and not a part of the training in Chinese medical schools. The great interest of the Western World in acupuncture is basically a phenomenon of the 1970's. The theory of chiropractic developed along separate lines and is of very recent vintage by comparison.

At this point the trial court found in findings 18 and 22 in

substance: Acupuncture is a separate and distinct modality of treatment and is not a natural part of any other modality of treatment.

We are asked to set aside the findings.

It is only during the last ten years that any of the branches of the healing arts—the practice of medicine and surgery, the practice of osteopathy and the practice of chiropractic—has recognized or known of the use of acupuncture.

We do not fault the trial court for its findings 18 and 22—that acupuncture is a separate modality of treatment and not a natural part of any other modality of treatment. Certainly it was not a natural part of any other modality or treatment known to the branches of the healing arts because it was not known to the Western World until the early 1970's.

The court might have extended its findings 18 and 22 by finding further that acupuncture was adopted by all three branches of the healing arts in the early 1970's, and became a modality of their treatment. It would appear that the findings taken as a whole do reach that conclusion.

The plaintiffs' objections to the trial court's conclusions of law presents the real crux of this litigation. The plaintiff questions conclusions 4, 5, 6, and 7. The objections will not necessarily be considered in the order mentioned.

We are asked, did the trial court err in its conclusion of law number 5 that if chiropractors are to be permitted to practice acupuncture in Kansas, this authorization must come from legislative rather than by judicial decree?

We are forced to agree with the trial court's conclusion. In *State, ex rel., v. Gleason,* 148 Kan. 1, 4 and 5, 79 P.2d 911 (1938), we stated:

"It has been uniformly held in this state [citations omitted] that in the exercise of its police power, and for the welfare and protection of its citizens, a state may enact statutes fixing educational and other reasonable and proper qualifications for those who, for a compensation, engage in the healing of the sick, afflicted, or injured, and require such persons, before engaging in such practice, to procure a certificate evidencing the fact they have attained such qualifications, and authorizing them to practice the art or profession of healing in harmony with established standards of their respective qualifications, as indicated by such certificate. The authority of the state to enact such statutes is conceded in this action."

The construction of the statute is a function of the judiciary. In the construction of the statute the legislative intent is to be

determined from a general consideration of the whole act. *State, ex rel., v. Moore,* 154 Kan. 193, 117 P.2d 598 (1941).

We are next asked—did the trial court err in its conclusion of law number 4 that acupuncture involves the piercing of skin for treatment, not diagnostic purposes, and comes within the term "surgery" as it is now defined and commonly understood?

There is much confusion as to what the legislature intended by the use of the term "surgery" in the Healing Arts Act. In designating persons deemed engaged in the practice of medicine and surgery, K.S.A. 1978 Supp. 65-2869 states in part:

"*(b)* Persons who . . . perform any surgical operation of whatever nature by the use of any surgical instrument, procedure, equipment, or mechanical device for the diagnosis, cure or relief of any wounds, fractures, bodily injury, infirmity, disease or physical or mental illness, of human beings."

As noted above, in designating persons deemed engaged in the practice of chiropractic, K.S.A. 1978 Supp. 65-2871(*b*) describes them as persons who adjust any misplaced tissue of any kind or nature, manipulate or treat the human body by *manual, mechanical,* electrical or natural methods or by the use of physical means.

The defendants state in their brief:

"The word 'surgery' has developed a rather special meaning to the ordinary laymen. In particular, it is generally used to denote that procedure carried on in hospitals involving major incisions in the body. However, this conversational meaning is not the dictionary definition of the word. Webster's Third New International Dictionary defines 'surgery' as a 'branch of medicine concerned with diseases and conditions requiring or amenable to operative or *manual* procedure . . . .' This definition is much broader than the conversational meaning we have assigned to it.

"It is interesting the definition given in Webster's Third New International is identical to the definition contained in major medical dictionaries. . . ." Emphasis ours.

Should we give the term "surgery" the broad meaning contended for by the defendants, we would render the Healing Arts Act nonsensical. K.S.A. 1978 Supp. 65-2871 grants to chiropractors the right to "treat the human body by *manual,* mechanical . . . or natural methods or by the use of physical means." In the last phrase of the same sentence they are prohibited from practicing surgery which includes *manual* procedure if we follow the strict dictionary definition of "surgery."

We are forced to conclude the legislature had in mind, when using the term "surgery," a more limited meaning such as the

rather special meaning developed by the ordinary layman, *i.e.,* "Surgery is what surgeons do"—sever the tissues of the body for the purpose of penetration for treatment, replacement or removal of afflicted parts. The simple piercing of the skin by the insertion of a solid wire or needle, not intended to separate or sever tissue, for the purpose of treating by acupuncture is not "surgery" as that term is used in the Healing Arts Act.

The last question is, did the trial court err in its conclusion of law number 7, that K.S.A. 1978 Supp. 65-2871 does not permit chiropractors to practice acupuncture.

Again we are forced to conclude the trial court erred.

Without extending this opinion further by repetition of fact, it will suffice to say that at the time the legislature passed the comprehensive Healing Arts Act it was familiar with all of the facts herein stated. The legislature knew acupuncture had been adopted as a modality of treatment at the same time and along with the other two branches of the healing arts. The legislature in 1974 authorized chiropractors, along with osteopaths, physicians and surgeons, upon meeting certain requirements, to use acupuncture in their practice for the purpose of filing a report with the legislature as to results of the use of acupuncture. The legislature knew that acupuncture was being taught in accredited chiropractic schools.

The legislature must have known of the analgesic values of acupuncture used and searched for by all branches of the healing arts to reduce the feeling of pain and relax the patient for treatment.

We conclude that acupuncture had been adopted by the chiropractors as a modality of their treatment at the time of the enactment (February, 1976) of K.S.A. 1978 Supp. 65-2871, and was so known to the legislature. The practice of acupuncture is not prohibited by such act.

The defendants challenge the right of plaintiffs to bring this action because of lack of the prerequisites of a sufficient actual controversy.

The contention is without merit.

The plaintiffs, under the opinion of the attorney general, would be subject to prosecution if they continued to practice acupuncture because in his opinion it constituted surgery and as such was prohibited to chiropractors.

Plaintiffs are entitled to a declaratory judgment to interpret the meaning of "surgery" under K.S.A. 1978 Supp. 65-2871 before they are subject to criminal prosecution:

"It has long been settled courts also have jurisdiction, under the Declaratory Judgment Act, to determine the validity of statutes or ordinances before a party undertakes to act in apparent violation thereof. That is the purpose and intent of the remedial relief contemplated by the act. (G.S. 1949, 60-3132; *Hyde Park Dairies v. City of Newton,* 167 Kan. 730, 208 P.2d 221; *State, ex rel., v. Shanahan,* 178 Kan. 400, 286 P.2d 742; and see, *School District v. Sheridan Community High School,* 130 Kan. 421, 286 Pac. 230.)" *State Association of Chiropractors v. Anderson,* 186 Kan. 130, 135, 348 P.2d 1042 (1960).

The judgment is reversed and the trial court is directed to enter an order in favor of the plaintiffs in harmony with the conclusions reached in this opinion.

FROMME and MCFARLAND, JJ., not participating.