STATE of Iowa, ex rel., IOWA DEPARTMENT OF HEALTH, Appellee,

v.

Kenneth VAN WYK, Appellant,

Iowa Board of Chiropractic Examiners, Amicus Curiae.

No. 65904.

Supreme Court of Iowa.

June 16, 1982.

Lex Hawkins, Glenn L. Norris, and George F. Davison, Jr., of Hawkins & Norris, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and Jeanine Freeman, Asst. Atty. Gen., for appellee.

Edward W. Dailey Law Offices, P.C., Burlington, for amicus curiae.

HARRIS, Justice.

This appeal challenges the scheme by which the professional activities of chiropractors are defined and limited. Van Wyk, a chiropractor, was enjoined from (1) performing acupuncture, (2) withdrawing, or ordering withdrawal of, his patient's blood for analysis, and (3) prescribing or recommending a dietary course of treatment. Defendant has received training for these three practices in an approved chiropractic college. The trial court held that all three of these activities fall outside the ambit of those chiropractic functions contemplated or allowed by statute. The Iowa board of chiropractic examiners sought to intervene in defendant's support. As a preliminary question we have to determine the appropriateness of the intervention. More fundamental questions are whether the trial court rightly interpreted our statutes on chiropractic activity and, if so, whether the scheme is constitutional. We affirm the trial court.

This suit is but one manifestation of a protracted philosophical dispute between the Iowa department of health (hereinafter the department) and the Iowa board of chiropractic examiners (hereinafter the board). The board believes the definition and scope of chiropractic should and must be expanded to stay abreast developments in that field. The department believes chiropractic should remain carefully circumscribed.

The facts are not at issue in this confrontation. Defendant undertook training in health care activities which he and his examining board determined to be appropriate for a chiropractor but which would be an expansion on chiropractic activity as

defined in *State v. Boston*, 226 Iowa 429, 278 N.W. 291 (1938), Supp. 284 N.W. 143 (1939). The petition alleged defendant performed acupuncture upon a patient in treating for a pinched nerve. It alleged defendant directed a nurse under his supervision to draw blood from another patient for diagnostic purposes and later advised that patient with respect to a diet. On these bases it was asserted defendant was engaged in, and should be enjoined from, the practice of medicine and surgery or of osteopathic medicine and surgery.

Responding to plaintiff's application for separate adjudication of law points (Iowa R.Civ.P. 105) the trial court held that acupuncture, drawing of blood, and advice on diet and nutrition based on blood analysis are outside the scope of chiropractic and within the scope of medicine and surgery or osteopathic medicine and surgery. For reasons we shall explain, we agree.

Defendant admitted past use of chiropractic acupuncture (though he denied using needles in performing chiropractic neural reflex treatment). He stated he continued to draw blood from patients for diagnostic purposes and continued to advise patients on diet, food, and exercise. He stated he did so to support therapy, either as an adjustment of musculo-skeletal structures or to support other methods of chiropractic treatment for the purpose of aiding the human body in performing its natural function. In defense of this practice the defendant attached a declaratory ruling of the board of chiropractic examiners, dated January 7, 1978, which determined that these and various other practices were proper chiropractic treatment. A permanent injunction followed, restraining defendant from the three practices.

We issued a stay of the injunction pending appeal and granted the board of chiropractic examiner's request to participate amicus curiae. Some of the assignments will be considered together. Because we are to review the grant of summary judgment we must decide if plaintiff should prevail as a matter of law. *Anita Valley*,

*Inc. v. Bingley*, 279 N.W.2d 37, 40 (Iowa 1979).

■ I. The trial court denied the board of chiropractic examiner's petition for intervention. This denial is challenged in a separate assignment of error.

We take the traditional, liberal view of intervention. *Iowa State Dept. of Health v. Hertko*, 282 N.W.2d 744, 754 (Iowa 1979); *Rick v. Boegel*, 205 N.W.2d 713, 717 (Iowa 1973). Nevertheless we think intervention was properly denied here. Under section 679.19, The Code 1981, litigation is prohibited between administrative departments, commissions, or boards of state government.

The board argues this is a suit between the state and the board rather than between the department and the board and, hence, section 679.19 is inapplicable. But this suit is only nominally pressed by the state. It is fundamentally a dispute between the department and the board and plainly falls within the statutory prohibition. *Llewellyn v. Iowa State Commerce Commission*, 200 N.W.2d 881, 884 (Iowa 1972). We do not suggest that a board, as an arm of the state, can sue the state. We merely find this dispute to be one between the department and board and hold it to be proscribed by section 679.19. The practical effect here is not great. We have the advantage of extensive amicus curiae briefs filed in behalf of the board and heard its oral argument on submission of this appeal.

■ II. At issue is the right of chiropractors, here represented by the individual defendant, to determine and set the parameters of chiropractic treatment. The question is whether practitioners of this branch of health care are free to practice courses of treatment outside carefully defined limits. They argue this would be in the public interest because, with increased knowledge and experience, practitioners in any health field should be free to increase and expand techniques for health care.

Predictably, defendant's goal is also that of the board. But the goal is barred by long established principles which carefully describe the meaning of the term chiropractic.

The statutes governing chiropractic appear in chapter 151, The Code. Those for medicine appear in chapter 148, The Code. And the provisions governing osteopathic medicine appear in chapter 150A, The Code. The chiropractic definition in chapter 151 is plainly restrictive when compared with the definitions for medicine or osteopathic medicine. All three definitions contain provisions which are not actually descriptive but are intended merely to impose professional discipline upon all persons pretending to be practitioners: *See* §§ 151.1(1), 148.1(1), and 150A.1(1).

Chiropractors are defined as:

Persons who treat human ailments by the adjustment of the musculoskeletal structures, primarily spinal adjustments by hand, or by other procedures incidental to said adjustments limited to heat, cold, exercise and supports, the principles of which chiropractors are subject to examination under the provisions of section 151.3, but not as independent therapeutic means.

§ 151.1(2), The Code.

In contrast medical practitioners are defined as:

Persons who prescribe, or prescribe and furnish medicine for human ailments or treat the same by surgery.

§ 148.1(2), The Code.

Practitioners of osteopathic medicine and surgery are similarly defined:

Persons who prescribe, or prescribe and furnish medicine for human ailments or treat the same by surgery.

§ 150A.1.(2), The Code.

In *State v. Boston, supra*, the trial court issued a permanent injunction restraining Boston, a chiropractor from

the use of physiotherapy, electrotherapy, colonic irrigation, colon hygiene, ultra-violet rays, infra-red rays, radionics machines, traction tables, white lights, cold quartz ultra-violet light, neurolectric vitalizer, electric vibrator, galvanic current and sinusoidal current for the purpose of

treatment of the sick or for any other purpose in connection with his practice of chiropractic and from the use of medicine and surgery and from prescribing certain or specific course of diet for any patient as an independent remedy or means of treatment.

226 Iowa at 434, 278 N.W. at 293. On Boston's appeal we affirmed the issuance and held the injunction should extend to prohibit prescribing for or advising defendant's patient with respect to diet.

We granted Boston a rehearing after which he rephrased the question as follows: "Do the things which the evidence shows the defendant did, constitute the practice of medicine and surgery?" Boston argued that a chiropractor, as a member of a healing profession, could use any method of treatment so long as he did not violate the expressed prohibitions found in the code. We persisted in our original view:

The practice of medicine and surgery is the practice of the healing art, and, unless some restrictions be placed thereon by the legislature, the whole field of medicine and surgery is open to the practitioner. On the other hand, the practice of chiropractic, although recognized as a branch of the healing art, is throughout held and considered to be only one form of the practice, within well-defined limits, of the science of healing, as such practice is defined by Code section 2555. That is the method which may be used. To this the legislature has added, in section 2559, certain prohibitions. The legislature has prescribed the method of healing which may be used by these practitioners, and has further mentioned other methods which may not be used. The original opinion, describing the method these practitioners may employ, holds that these restrictions merely emphasize the limitations laid down in section 2555, to which defendant takes exception.

If section 2559 broadened the field in which the chiropractor might practice, and if he has the right to go outside the restrictions and employ other methods except such as are therein prohibited, then the whole field of medical science is open to him except as prohibited in that section. This defendant cannot claim. We believe that medicine and surgery comprehend the whole field of medicine and materia medica; and that it was the intent of the legislature that chiropractic should be merely a form of treatment, and that it must be practiced according to the rules laid down by law. Whether or not the limitations are proper or too restrictive is not for this court to say.

If the use of these modalities is forbidden to the chiropractor, but they are used in the practice of medicine and surgery, as is held in the former opinion, to which we adhere, then this action was properly brought for a violation of the medical practice act.

It seems to us that the use of the appliances or modalities in the case at bar does come within the domain of medicine and surgery and would constitute a part of that practice. Therefore, as it constitutes a part of the practice of medicine and surgery, and does not come within the definition of chiropractic, the injunction was properly issued.

. . . .

The reason for all laws restricting this and other professions is the protection of the public, and to that end the legislature has seen fit to enact laws and provide means for enforcing the regulations governing the practice of the various forms of the art of healing, permitting each practitioner to follow his profession according to its established principles. Each may have its merits; but those persons who are authorized to practice one form of the art may not encroach upon another form for which they have no authority from the state.

226 Iowa at 437–38, 284 N.W. at 144 (emphasis added).

Defendant attacks our opinion in *Boston* on two bases. He believes it was out of step with our other decisions and thinks it is no longer supportable, considering present circumstances. We are less sure than defendant is that *Boston* was an aberration in

our case and statutory law. *See Correll v. Goodfellow*, 255 Iowa 1237, 1241–42, 125 N.W.2d 745, 747 (1964); *Lowman v. Kuecker*, 246 Iowa 1227, 1229, 71 N.W.2d 586, 588 (1955). However this may be, there can be no doubt of the meaning of our holding in *Boston*. It has never been overruled and has stood as our interpretation of the statutory definition of the scope of chiropractic for decades.

In arguing that adherence to the *Boston* rationale is no longer warranted defendant points to a number of developments since then. He recognizes the opinion proscribed the giving of advice on diet by a chiropractor but notes (1) the board has since declared this to be within the practice of chiropractic, (2) it is a relatively unregulated field, and (3) defendant is trained in the area. With respect to blood withdrawal defendant notes among other things (1) blood withdrawal is a diagnostic procedure rather than a mode of treatment, (2) defendant has been trained in blood withdrawal procedure, (3) withdrawal of blood is not surgery, and (4) others possessing little or no training are allowed to withdraw blood. He contends withdrawal of blood followed by its analysis is elemental to the determination of proper chiropractic treatment. With regard to acupuncture defendant points out he is trained in acupuncture where there is no showing in the record that acupuncture is included in the practice of medicine or that medical doctors are trained in the procedure. Defendant points out that acupuncture is held to be within the practice of chiropractic in Kansas. *Acupuncture Soc., Etc. v. Kansas State Bd.*, 226 Kan. 639, 602 P.2d 1311, 1316 (1979).

The gist of defendant's argument is that chiropractors should not be locked in to the level of professionalism that existed for them long ago. They should be free, as are those in other professions, to develop and enlarge their techniques without being required each time to seek a legislative enactment.

The code definition of chiropractic was unchanged from the time of *Boston* (1938) until 1973 when new legislation was proposed. Notwithstanding the 1973 and other attempts to broaden the definition the legislature has resisted. From the 1973 proposal arose the definition of chiropractic as it now reads. The department contends, and we agree, that the amendment represents no extensive departure from *Boston*. It merely expands upon the procedures incident to adjustment of the musculoskeletal structures. In adopting that amendment the legislature specifically rejected an expansion which would have referred to nutrition.

More significantly the 69th General Assembly recently rejected House File 619. That proposal would have defined chiropractic substantially as defendant seeks to have us define it in this appeal.

▇ Few canons of statutory construction are so firmly established as the presumption that the legislature is familiar with our holdings, especially those interpreting legislative enactments. If we improperly determine the legislature's intention it will, by additional legislation, correct us. *Mallory v. Paradise*, 173 N.W.2d 264, 266 (Iowa 1969). This is true where there has been a legislative re-enactment of a statute. The presumption is then especially strong that the legislature would have specifically altered judicial interpretations of prior legislation if it so desired. Sutherland: Statutes and Statutory Construction § 49.10 (C. Sands 4th Ed. 1973). Under these principles we think it is clear that we should not, by judicial interpretation, inscribe into the law the definition of chiropractic which the legislature refused to enact during the session immediately past.

The question is archetypical of the type appropriate for the legislative branch of government. The courts have no laboratories or other means to independently determine disputed matters of public health. For example, we are in no way equipped to respond to defendant's contention that he (and other similarly situated) should be allowed to proceed into acupuncture. He says he is trained in the field and others are not so he would thus be filling a public need.

It is perhaps possible that some promising areas of health care are overlooked or ignored under our existing scheme. On the other hand some methods of health care may be deliberately left undeveloped and unpracticed because they are thought to be dangerous, or worthless. The courts are not called upon to sort out these areas and decide which are promising and which are not.

It would be an abuse of power for us to second guess what we have long held to be the clear legislative determination, so long as that determination abides within the framework of the constitution. Constitutionality is a matter we take up in the following division.

III. Defendant argues that the scheme under chapter 151 violates his rights as a chiropractor, and his rights as a patient of a chiropractor, to due process, equal protection, and privacy under the state and federal constitutions. He believes the State has at no time shown a rational basis for the scheme and asserts that the three subjects (acupuncture, withdrawal of blood specimens, and advice on a diet) are in fact included in chiropractic.

■ Statutes, of course, enjoy a strong presumption of constitutionality. In order to prove it unconstitutional a challenger bears the burden of negating every reasonable basis for a statute. *Franks v. Kohl*, 286 N.W.2d 663, 669 (Iowa 1979). Our review is de novo. *Bierkamp v. Rogers*, 293 N.W.2d 577, 580 (Iowa 1980).

■ In his constitutional challenge defendant did not point to suspect classifications or fundamental rights requiring strict scrutiny. Accordingly the rational basis test is to be applied. *Richards v. City of Muscatine*, 237 N.W.2d 48, 61 (Iowa 1975); *Green v. Shama*, 217 N.W.2d 547, 554 (Iowa 1974). There is another reason for applying the rational basis test. The regulation of health professions, for the preservation and protection of public health, is universally regarded as a duty of the State in the exercise of inherent police power. 61 Am. Jur.2d, Physicians, Surgeons, Etc., § 132

(1981). Because the health professions are invested with a strong public interest, statutes regulating them should be measured against the rational basis standard. *See MRM, Inc. v. City of Davenport*, 290 N.W.2d 338, 341 (Iowa 1980).

■ Under this test the statutory scheme, as interpreted by *Boston*, easily withstands the equal protection challenge. The statutes are reasonably related to a legitimate state interest: prohibiting practices which lie beyond the scope of a limited health profession thereby, in the view of the legislature, protecting the public interest in adequate health care.

■ Defendant's due process challenge is twofold. It is suggested he is deprived of property (profits) without due process of law and that the statute is unconstitutionally vague. We can pass our serious reservations on whether the defendant preserved this claim for review. There was no violation of due process. Where a statute is, as here, nonpenal the due process test is more easily met. This is especially true of statutes conducive of public good or welfare. *MRM, Inc.*, 290 N.W.2d at 345. We explained the test for vagueness in *Pottawattamie Cty. v. Iowa Dept., Etc.*, 272 N.W.2d 448, 452 (Iowa 1978). The meaning of the statutory scheme challenged here is fairly ascertainable by reference to the statutory language and our opinions. The vagueness challenge is without merit.

■ Defendant's due process claim, based on his right to income, also fails. "[T]he right to pursue any trade or calling is subordinate to the right of the state to regulate such freedom of action where required to protect the public health, safety, or welfare." *MRM, Inc.*, 290 N.W.2d at 343.

■ Relying on *State v. Pilcher*, 242 N.W.2d 348, 359 (Iowa 1976), defendant argues his right to privacy was violated. *Pilcher* notes two aspects of the right: seclusion and that which is personal. 242 N.W.2d at 358. Defendant's privacy assertion stands on the second aspect, the claim that he had a personal right to employ the challenged methods in the practice of his

profession and to receive them as a chiropractic patient. What we have already said controls defendant's claim of his right to pursue his profession. That right yields to the superior right of the state to regulate his freedom, where required, to protect the public health, safety, or welfare.

■ As a matter of privacy persons enjoy a fundamental right to seek or reject medical treatment generally. *See Andrews v. Ballard*, 498 F.Supp. 1038, 1044–51 (S.D. Tex.1980). It does not follow, however, that there is a fundamental right to select a particular treatment or medication. *See Rutherford v. United States*, 616 F.2d 455, 457 (10th Cir. 1980). A private chiropractic patient cannot, on the basis of a claim of privacy, expand the scope of what the legislature has fixed for proper chiropractic treatment. In any event defendant here was not enjoined from seeking a particular treatment as a chiropractic patient. He was merely denied the opportunity of seeking certain treatments from a chiropractor. He has not shown, for example, that the injunction renders acupuncture unavailable to him.

Defendant's constitutional challenges are without merit. *See generally Demido v. Kelly*, 100 Mich.App. 254, 299 N.W.2d 43 (1980) (upholding statute proscribing certain practices from chiropractic against due process, equal protection, and vagueness challenges); *England v. Louisiana State Board of Medical Examiners*, 246 F.Supp. 993 (E.D.La.1965) (upholding statutory scheme, requiring chiropractors, in essence, to pass same requirements as doctors in order to practice, against equal protection and due process challenges); *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963) (upholding statute outlawing the business of "debt adjustment" except by lawyers against due process and equal protection challenges).

It would unnecessarily extend this opinion to specifically discuss defendant's other contentions, none of which would change the result. The trial court did not err in enjoining defendant from performing the three functions.

AFFIRMED.

All Justices concur except McCORMICK and LARSON, JJ., who dissent.

McCORMICK, Justice (dissenting).

I would overrule *State v. Boston*, 226 Iowa 429, 278 N.W. 291 (1938), *aff'd on rehearing*, 284 N.W. 143 (1939). I believe the case was wrongly decided and do not believe we are precluded from correcting the mistake.

I. *The merits of the Boston holding.* The court in *Boston* was confronted with an issue concerning a chiropractor's right to employ certain treatment modalities. In holding that the chiropractor was barred from using them, the court relied on a portion of the statutory classification of persons deemed to be engaged in chiropractic: "Persons who treat human ailments by the adjustment by hand of the articulations of the spine or by other incidental adjustments." § 2555(2), The Code 1935; *Boston*, 226 Iowa at 431, 278 N.W. at 292. The court read this provision as a prohibition of any other form of chiropractic treatment. It did so despite a separate statutory provision setting out prohibited practices: "A license to practice chiropractic shall not authorize the licensee to practice operative surgery, osteopathy, nor administer or prescribe any drug or medicine included in materia medica." § 2559, The Code 1935.

The flaw in the court's approach is readily apparent when the chiropractic practice act is compared with others. For example, the corresponding classification of medicine and surgery included: "Persons who prescribe or prescribe and furnish medicine for human ailments or treat the same by surgery." § 2538, The Code 1935. This provision also appears in the present Code. *See* § 148.1(2). If this provision also constitutes a prohibition of other forms of medical or surgical treatment, those physicians who employ orthopedic devices, or psychiatry, or pychotherapy, or radiology, or ultrasound or myriad other forms of common medical di-

agnosis and treatment exceed the scope of their licenses. Moreover, nothing in the statutes then or now purports to give either chiropractors or physicians any right to withdraw blood or prescribe diet. Nor is either profession authorized to use acupuncture, unless acupuncture is "surgery" and thus permitted to physicians and barred to chiropractors. *Cf. Acupuncture Society of Kansas v. Kansas State Board of Healing Arts*, 226 Kan. 639, 602 P.2d 1311 (1979) (holding chiropractors may employ acupuncture despite prohibition against surgery in practice act).

The fact is, as this court held before *Boston*, the classification in the medical practice act did not purport to delineate lawful and unlawful modes of treatment:

> The statutes do not attempt to discriminate between different schools of medicine or systems for the cure of disease. No method of attempting to heal the sick, however occult, is prohibited. All that the law exacts is that, whatever the system, the practitioner shall be possessed of a certificate from the State Board of Medical Examiners, and shall exercise such reasonable skill and care as are usually possessed by practitioners in good standing of that system in the vicinity where they practice. This excludes no one from the profession, but requires all to attain reasonable proficiency in certain subjects essential to the appreciation of physical conditions to be affected by treatment. The object is not to make any particular mode of effecting a cure unlawful, but simply to protect the community from the evils of empiricism.

*State v. Heath*, 125 Iowa 585, 589, 101 N.W. 429, 431 (1904). The court in *Boston* had no basis for a different analysis of the chiropractic practice act, except when the express prohibitions in section 2559 might apply. Those prohibitions now appear in section 151.5.

A similar statutory scheme is followed in other health field practice acts. *See, e.g.,* chapter 149 (podiatry); chapter 150 (osteopathy); chapter 150A (osteopathic medicine and surgery); chapter 153 (dentistry); chapter 154 (optometry). The practice acts recognize various fields of health care and subject practitioners to licensing requirements. The object is to assure that persons who are licensed are qualified by education and training in the particular field. It is left to the examining boards for each profession to determine an individual's qualifications. *See* chapter 147. Statutory definitions of the profession do not freeze the methods of diagnosis and treatment to those existing at the time of the enactment. If the General Assembly wishes to prohibit particular methods of care within a particular field, it knows how to do so. *See, e.g.,* §§ 149.5, 150.8 and 151.5. No statutory basis exists for holding as the court did in *Boston* that only physicians are free to employ new methods of diagnosis and treatment without explicit legislative permission.

II. *The court's right to overrule Boston.* I do not think the court's hands are tied by the fact the legislature has, by the 1974 amendment to section 151.1(2), only partially overruled the *Boston* holding. The court is always free to correct its own mistakes, and legislative inaction is not a bar to doing so. *See* 2A *Statutes and Statutory Construction* § 49.10 (4th ed. C. Sands 1973).

This court was confronted with an analogous situation when the demand-waiver rule relating to statutory speedy trial rights was challenged in *State v. Gorham*, 206 N.W.2d 908 (Iowa 1973). The court had interpreted section 140024, The Code 1939, as requiring a demand for speedy trial as a condition to an accused's statutory right to speedy trial in *Pines v. District Court*, 233 Iowa 1284, 10 N.W.2d 574 (1943). Subsequently the legislature amended the statute to make it applicable without a demand to an accused in jail and not represented by counsel. *See State v. Long*, 256 Iowa 1304, 130 N.W.2d 663 (1964). This court, nevertheless, overruled *Pines*, quoting with approval a statement from *Girouard v. United States*, 328 U.S. 61, 69–70, 66 S.Ct. 826, 830, 90 L.Ed. 1084, 1090 (1946):

> It is at best treacherous to find in Congressional silence alone the adoption

of a controlling rule of law. We do not think under the circumstances of this legislative history that we can properly place on the shoulders of Congress the burden of the Court's own error.... The silence of Congress and its inaction are as consistent with a desire to leave the problem fluid as they are with an adoption by silence of the rule of those cases.

*See* 206 N.W.2d at 913. In accordance with the example in *Gorham*, I would hold that the legislature's failure to repudiate the *Boston* decision does not prevent this court from doing so.

Because I would overrule *Boston*, I would also hold that the trial court erred in sustaining the motion for summary judgment.

LARSON, J., joins this dissent.